Marylee BENAVIDEZ, Jason Kenny
Benavidez and Jose Guy Benavidez,
Plaintiffs-Appellants,

v.

Franklin L. GUNNELL, Individually and
in his official capacity as Cache County
Attorney; Ray Oldham, Mel Mower,
Keith Wertman and Craig Johnson, In-
dividually and in their official capacities
as Police Officers of the Logan City
Police Department; H. Sanford Camp-
bell, Heber Sharp and E. Wayne Wright,
Defendants-Appellees.

No. 82–1099.

United States Court of Appeals,
Tenth Circuit.

Dec. 8, 1983.

William D. Marsh, Ogden, Utah, for plaintiffs-appellants.

Paul C. Droz of Snow, Christensen & Martineau, Salt Lake City, Utah, for defendant-appellee Franklin L. Gunnell.

Paul Matthews of Hanson, Russon & Dunn, Salt Lake City, Utah (Mary Ellen Sloan of Lund and Associates, Salt Lake City, Utah, on brief), for defendants-appellees Ray Oldham, Mel Mower, Keith Wertman and Craig Johnson.

Dee V. Benson, Salt Lake City, Utah (Merlin R. Sybbert and Scott Daniels, Salt Lake City, Utah, with her on brief), of Snow Christensen & Martineau, Salt Lake City, Utah, for defendant-appellee Heber Sharp.

Brinton R. Burbidge, Salt Lake City, Utah (B. Lloyd Poleman and J. Douglass Mitchell, Salt Lake City, Utah, were on brief), of Kirton, McConkie & Bushnell, Salt Lake City, Utah, for defendants-appellees H. Sanford Campbell and E. Wayne Wright.

Before HOLLOWAY, BREITENSTEIN and LOGAN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an action under §§ 1983 and 1985 of the Civil Rights Act. The essential facts are as alleged in the complaint and as shown by the affidavits of the various parties. The district court gave judgment for each of the defendants and the plaintiffs appeal. We affirm.

Mrs. Jeanine Moss was the daughter of plaintiff Marylee Benavidez and sister of plaintiffs Jason and Jose Benavidez. Mrs. Moss was a member of the Church of Jesus Christ of Latter-Day Saints, LDS, and H. Sanford Campbell was her Bishop. She related to him her mental problems and asked for assistance for herself and her two children, aged five and seven years. She received counseling from defendants E. Wayne Wright and Heber Sharp who were both psychologists and members of LDS.

In the fall of 1979, her problems increased, ultimately requiring hospitalization. On October 12, 1979, she executed a standard form "Natural Parent Foster Care Agreement," which provided for the voluntary placement of the children through the child placement agency of LDS. Through this agency, the children, who had been staying in the Wright home through an informal agreement with Mrs. Moss, were formally placed there.

Early in the evening of October 14, 1979, the plaintiffs, Mrs. Benavidez and her two sons, appeared at the Wright home and demanded the children. Bishop Campbell was called. An argument ensued. Mrs. Benavidez left with the two children.

Shortly thereafter defendant Sharp and defendant police officers arrived at the scene. They were told that the children had been placed in the Wright home under the LDS agreement and that the Benavidez knew this. At the request of the police officers, a telephone call was put in to County Attorney Gunnell, the local prosecuting attorney, at his home. After being informed of the facts, he told officer Oldham that the officers should go to the Benavidez home, retrieve the children, and return them to the Wrights. He said that they did not need a search warrant because it was a felony kidnapping. They were to gain entrance to the Benavidez home through cooperation, if possible, and should use whatever force was necessary to handle the situation as if it were a kidnapping. They were entitled to credit the statements made to them by the Bishop and the others.

Joined by two other officers, defendants Wertman and Johnson, the officers went to the Benavidez home. The Benavidez brothers demanded a search warrant. The officers said that they had none. A scuffle ensued. The brothers were handcuffed. The house was searched without finding the children. The brothers were taken to the

police station. The brothers then became cooperative and told the officers they would try to locate the children. After making telephone calls, they learned that the children were at the home of a stepsister. The officers went there, found the children, and returned them to the Wrights' home. The Benavidez brothers were then released. No charges were filed against them. They were in custody about three hours. See brief of appellants, p. 21.

On the basis of these facts shown by the amended complaint and the affidavits of the parties, the court entered a summary judgment of dismissal in favor of all the defendants. We shall discuss the problem as it affects each class of defendants.

The prosecuting attorney claims absolute immunity. He was called at his home after business hours and asked by the officers what they should do when there was a taking of children with threats of violence from the home of the person in whom they were under a custodial agreement with the mother. He told the officers that they should retrieve the children and return them to the Wright home. He further said that they did not need a search warrant since this was a felony kidnapping, that they should gain cooperation, if possible, to enter the Benavidez home, and that they should use whatever force necessary and should handle the situation as if it were a kidnapping.

■ The County Attorney claims absolute immunity under *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128. The Court in *Imbler* held that a prosecutor is absolutely immune from a § 1983 damage suit for his conduct in "initiating a prosecution and in presenting the State's case," 424 U.S. at 431, 96 S.Ct. at 995, but explicitly refused to determine "whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." The prosecutor did not have absolute immunity in giving advice to the police officers.

■ In *Pierson v. Ray,* 386 U.S. 547, 555–557, 87 S.Ct. 1213, 1218–1219, 18 L.Ed.2d 288, the Court held that the defense of good faith and probable cause was available to police officers in an action under § 1983. Although this is an affirmative defense which may be raised before a jury, when a motion for summary judgment is properly supported by affidavits, the adverse party may not rest upon the allegations of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Kipps v. Ewell,* 4 Cir., 538 F.2d 564, 566.

The Utah Code Ann., § 76–5–301, states that "(1) [a] person commits kidnapping when he intentionally or knowingly and without authority of law and against the will of the victim:——(d) [d]etains or restrains a minor without consent of its parent or guardian."

Acting upon the information given by reliable persons, the prosecutor and officers had reasonable cause to believe that a kidnapping had occurred. The prosecutor told the officers to go to the Benavidez home and make a search for the children using whatever force was necessary and that they should handle the situation as if it were a kidnapping. The police officers went to the Benavidez home and were met by the Benavidez brothers who demanded a search warrant. Upon being told that the officers had no warrant, they blocked passage with their hands in their pockets. A scuffle ensued with the brothers being thrown to the ground and handcuffed. A search of the house did not reveal the children. They took the brothers to the police station where the brothers became cooperative and, after telephone calls, told the officers that the children were in the home of a stepsister. The children were retrieved, returned to the Wrights, and the brothers were released with no charges filed against them. They were in custody but a few hours.

■ On the basis of the facts presented to them, the prosecutor and police officers had good cause to act as they did. They secured the children and returned them to their foster home. Nothing in the affida-

vits submitted shows to the contrary. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396, a case involving Presidential assistants, the Court reviewed the standard of qualified immunity and said, 457 U.S. at 819, 102 S.Ct. at 2739, "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken, 'with independence and without fear of consequences.'" Citing *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288. This is a practical answer to a difficult situation. From our review of the allegations of the amended complaint and the affidavits, we are convinced that the prosecutor and the police officers have established, without contradiction, that they acted in good faith and with cause. Accordingly, they were entitled to summary judgment on the ground of qualified immunity.

Plaintiffs further contend that the private parties, Campbell, Wright, and Sharp, conspired with the prosecutor and police officers to deprive the plaintiffs of their constitutional rights in violation of §§ 1983 and 1985. The allegations of the amended complaint are in conclusory language which is not enough. Be that as it may, they reported to the police that the Wrights had custody under the child placement agency of the LDS and that the children had been taken with threats of force. In so doing, they were reporting a state crime only. We know of no case in which the report of a state crime is action under color of state law under § 1983.

The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985. See *Butler v. Goldblatt Bros., Inc.,* 7 Cir., 589 F.2d 323, 327, cert. denied, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53.

Affirmed.