**Dr. Arthur P. TALIAFERRO, Plaintiff,**

v.

**Dr. Eric VOTH; Dr. Richard Uhlig; Joseph Furjanic; Richard Gannon; Myrna Harman; James P. Kleoppel; Osco Drug, Inc.; DeGoler's, Inc., Defendants.**

**Civ. A. No. 89–2545–V.**

United States District Court, D. Kansas.

Oct. 1, 1991.

Denise L. Adams, Rosie M. Quinn & Associates, Kansas City, Kan., and Larry Delano Coleman, Kansas City, Mo., for plaintiff.

Lawrence T. Buening, Jr., Kansas Bd. of Healing Arts, Steven M. Dickson, Dickson & Pope, P.A., John W. Campbell, Office of the Atty. Gen., Topeka, Kan., Hal D. Meltzer, Turner & Boisseau, Chartered, Mark D. Lewis, Barry W. McCormick, Payne & Jones, Chtd., Overland Park, Kan., and Holbrook, Heaven & Fay, P.A., Merriam, Kan., for defendants.

## MEMORANDUM AND ORDER

BEBBER, District Judge.

This case is now before the court on the following:

Defendants James P. Kleoppel's and Osco Drug, Inc.'s Motion for Summary Judgment (Doc. 194); and

Defendant DeGoler's, Inc.'s Motion for Summary Judgment (Doc. 196).

Plaintiff has responded and opposes these motions. For the reasons stated below, defendants' motions for summary judgment are granted.

On December 28, 1989, plaintiff filed his complaint seeking damages and equitable relief pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the state law torts of defamation, malicious prosecution, tortious interference with a business expectancy, medical malpractice,[1] and negligence.[2] Plaintiff's claims arise out of administrative disciplinary action taken by the Kansas State Board of Healing Arts ("Board") against plaintiff in 1988, and 1989. Plaintiff has sued the Board, and several members of the Board in both their official and individual capacities, as well as the pharmacies and the pharmacists who provided information to the Board regarding prescriptions written by plaintiff.

## I. SUMMARY JUDGMENT STANDARDS

In considering a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only when the evidence indicates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing," that is, pointing out to the district court, that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## II. FACTUAL BACKGROUND

The pertinent uncontroverted facts established by the parties in accordance with D.Kan.Rule 206(c) appear as follows. In December of 1986, defendant James P. Kleoppel was working part time as a pharmacist at the Osco Drug, Inc., store located at 10th and Minnesota in Kansas City, Kansas. On December 22, 1986, while providing consulting services to the Board on another case involving Dr. Vakas, Kleoppel told the Board that he was aware of another situation similar to the Dr. Vakas investigation where patients were engaging in the street resale of prescribed, controlled drugs. At the request of the Board, Kleoppel filled out a complaint form against Dr. Taliaferro on December 22, 1986, reporting that two patients had brought in prescription for Valium 10 mg. #90 written by

---

1. Plaintiff alleges medical malpractice against defendant Voth only.

2. Plaintiff originally asserted a claim for "gross negligence." However, pursuant to paragraph 5(b) of the Pretrial Order, the term "gross" has been deleted from plaintiff's complaint. D.Kan. Rule 213(c) (pretrial order controls the subsequent course of the action).

plaintiff and were allegedly trying to fill the prescription at Osco for the purpose of reselling the drugs.[3] At the time of filing the complaint, Kleoppel had never seen or spoken with Dr. Taliaferro, but was familiar with his signature. In addition, Kleoppel did not realize that reporting the specific incident and filing the complaint could result in disciplinary action against Dr. Taliaferro. After December 22, 1986, Kleoppel had no further contact with the Board regarding Dr. Taliaferro's case.

Joseph Furjanic was disciplinary counsel for the Board from August, 1986, until August, 1990. In December, 1986, or January, 1987, Furjanic read the complaint form filled out by Kleoppel, opened a case file, and gave it to Board investigator, Everett Willoughby. After Willoughby left the Board in approximately October of 1987, the Taliaferro investigation file was transferred to Board investigator, Myrna Harman.

Harman began her investigation by reviewing prescriptions on file at the Osco store at 10th and Minnesota in order to check for excessive prescription writing by Dr. Taliaferro. Harman did her "script" check at Osco during a randomly selected six-week period of time in October of 1987. Harman then subpoenaed plaintiff's patient records for patients who had had repeat prescriptions within the six-week period.

Richard A. Uhlig, D.O., was secretary of the Board from 1984, until approximately December of 1987, and from December of 1987, until July of 1988, Dr. Uhlig was the interim executive director of the Board. On January 15, 1988, Dr. Uhlig formally met with Dr. Taliaferro to review patient records and discuss plaintiff's prescribing methods. As a result of this meeting, Dr. Taliaferro agreed not to prescribe certain combinations of drugs for a 60–day period.

On June 18, 1988, a hearing was held regarding the results of the Board's investigation and an Emergency Order of Limitation of License was issued restricting plaintiff's privileges to prescribe Schedule II, III, and IV controlled substances pending further order of the Board. Pharmacies located in Wyandotte County, Kansas, were notified about this restriction through a letter from the Kansas State Board of Pharmacy, dated August 30, 1988.

In the fall of 1988, Harman received a computer printout from Social Rehabilitation Services ("SRS") indicating that Dr. Taliaferro had been writing what appeared to be new prescriptions for controlled substances. Harman then went to the pharmacies and asked to see specific prescriptions to find out whether or not they were refills. At Osco, Harman was seeking a July 14, 1988, prescription for Limbitrol because it appeared to be a new prescription. At Harman's request, the pharmacist on duty, Marcel Matson, gave her the original prescription. She then took the original prescription back to the Board's office and gave it to Disciplinary Counsel Furjanic. After this incident, Osco had no further contact with the Board and did not provide any further information related to the Board's investigation of plaintiff.

DeGoler's, Inc., operates two pharmacies located in Kansas City, Kansas. From December, 1987, through February, 1991, Gordon Kile was employed as a pharmacist at DeGoler's. On June 25, 1988, a prescription for Tylenol 3, issued by plaintiff, was filled at Degoler's by Kile.

On October 20, 1988, Harman reviewed certain prescriptions kept on file at DeGoler's and discovered the label of the Tylenol 3 prescription filled on June 15, 1988. Harman asked Kile, who was working on that day, whether the prescription was a refill. After inspecting the label, Kile indicated that the prescription was not a refill. Kile also offered to run a patient profile to check whether the label reflected a refill or a new prescription. Harman declined Kile's offer and took the original of the prescription with her and presented it to Disciplinary Counsel Furjanic.

Subsequent to Harman's visit, Kile ran a patient profile and discovered that the pre-

---

**3.** Kleoppel did not actually overhear the women say that they were going to resell the drugs, but reported to the Board what the Osco technician told him she had heard when the prescription was handed to her.

scription was a refill. Upon learning of his mistake, Kile immediately called Harman and told her that it was not a new prescription. Kile was not aware of the purpose of Harman's investigation while she was at DeGoler's. Kile is the only employee of DeGoler's who was contacted by the Board in connection with its investigation of plaintiff.

Richard Gannon was appointed to the position of Executive Director of the Board on July 11, 1988. On October 24, 1988, Gannon entered an Emergency Order suspending plaintiff's license to practice medicine because he believed that plaintiff had violated the June, 1988, limitation order. On October 27, 1988, the suspension was rescinded by the Board.

In January, 1989, the Board filed an Amended Petition for Revocation, Suspension, or Other Disciplinary Action.[4] On June 11, 1989, the Board and Dr. Taliaferro entered in to a stipulation whereby the Board issued an Enforcement Order on June 28, 1989, in which it rescinded its limitation order of June, 1988, its petition for revocation of August, 1988, and its petition for revocation of January, 1989. In return, Dr. Taliaferro agreed to abide by certain reporting requirements and patient record requirements and agreed to dismiss certain civil actions he had filed against the Board. Plaintiff then brought suit in this court on December 28, 1989.

## III. DISCUSSION

### A. 42 U.S.C. § 1983

Plaintiff alleges that the defendant pharmacies, Osco and DeGoler's, and defendant Kleoppel maliciously misrepresented that the June and July, 1988, prescriptions at issue were written by Dr. Taliaferro and, that they were also negligent in failing to correct the misrepresentations. Plaintiff further alleges that defendant Kleoppel

was negligent in submitting his complaint to the Board.[5]

Plaintiff may not base his section 1983 claim against defendant Osco or defendant DeGoler's on the basis of *respondeat superior*. *DeVargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 722 (10th Cir.1988) (corporate defendants are not vicariously liable for their employees' acts under § 1983). The uncontroverted facts show that an employee of Osco, namely defendant Kleoppel, filled out the complaint at the Board's request and that another employee, Matson, provided Board investigator Harman with the requested prescription. Likewise, the uncontroverted facts show that the alleged misrepresentations were made by an employee of DeGoler's, namely Kile. To succeed on his section 1983 claim against corporate defendants Osco and DeGoler's, plaintiff must show that Osco and DeGoler's "authorized, supervised, caused or participated" in the deprivation of plaintiff's federally protected rights. *Kaiser v. Lief*, 874 F.2d 732, 736 (10th Cir.1989); *see Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (municipalities may only be liable upon a showing that their employees acted pursuant to official policy or custom); *DeVargas*, 844 F.2d at 723 (rationale of *Monell* holding applies equally to corporate defendants). In the present case, it is not alleged, and there is no evidence, that the individual pharmacists' actions in furnishing information to the Board were "authorized" or "supervised" by Osco or DeGoler's or that Osco or DeGoler's "caused" or "participated" in allegedly depriving plaintiff of his federal or constitutional rights in any manner other than through the actions of its employees. Since there is an absence of evidence showing that plaintiff's section 1983 claim against Osco and DeGoler's is

---

4. The Board had previously filed a Petition for Revocation, Suspension, or Other Disciplinary Action against Dr. Taliaferro on August 19, 1988.

5. Plaintiff also alleges that the defendants collectively denied him due process of law by failing to promulgate objective criteria for use by

the plaintiff in the administration of prescription drugs. If such a duty exists, it is clearly owed by the Board, and not by the defendant pharmacies and pharmacists. Therefore, we hold that the present defendants are entitled to summary judgment as a matter of law on plaintiff's due process claims.

based on any theory other than *respondeat superior,* summary judgment is granted in favor of defendants Osco and DeGoler's on plaintiff's section 1983 claim.

■■■ Plaintiff has also failed to show that these defendants acted under "color of state law" as required by section 1983. A section 1983 claim requires a showing by plaintiff that there has been a deprivation of a constitutional right and that the defendant, in causing the deprivation, acted under "color of state law." *Kraemer v. Padgett,* 685 F.Supp. 1166, 1168 (D.Kan.1987). In *Lee v. Town of Estes Park,* 820 F.2d 1112 (10th Cir.1987), the Tenth Circuit explained when a private person's conduct may be viewed as having been performed under "color of state law":

> Although the color of state law requirement of § 1983 is perhaps typically met by action on the part of a state official, it is nonetheless well established that private individuals, in a proper case, can also be held liable under § 1983. However, in order to hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State. *Id.* at 1114 (citation omitted).

In the present case, plaintiff has not shown that the defendant pharmacies, Osco and DeGoler's, or defendant Kleoppel were "jointly engaged" with officials from the Board or that their conduct was otherwise "chargeable" to the state. It is uncontroverted that all of the information supplied to the Board and to Board investigator Harman was done pursuant to the request of the Board and not on the defendants' own initiative. Further, as established by the uncontroverted facts, none of these particular defendants were aware that the information that they supplied to the Board would be used as a basis for suspending plaintiff's license.

■■■ Finally, the Tenth Circuit has held that the mere furnishing of information to

state officials by a private actor does not constitute "joint action" under section 1983. *Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir.1983). Moreover, in *Young v. Arkansas Children's Hosp.,* 721 F.Supp. 197 (E.D.Ark.1989), it was held that "the mere furnishing of information by a private party to a law enforcement official, *even if the information is false,* is not sufficient to constitute joint activity with State officials in prohibited action or to state a claim against a private party under § 1983." *Id.* at 198 (emphasis added) (citation omitted). Based on the uncontroverted facts and on the above case law, we conclude that this is not a "proper case" for holding that these private party defendants were acting under "color of law." Therefore, summary judgment is granted in favor of defendants Osco, DeGoler's, and Kleoppel on plaintiff's section 1983 claim.

### B. 42 U.S.C. § 1982

Plaintiff alleges that the defendants denied him the same rights enjoyed by white physicians to hold property. Plaintiff bases his claim on the argument that his medical license constitutes "property" within the meaning of 42 U.S.C. § 1982. Without deciding whether plaintiff's medical license is a property interest protected by section 1982, we find that defendants are entitled to summary judgment on plaintiff's section 1982 claim.

■■■ Racial discriminatory animus is an essential element of a section 1982 action. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968); *Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 617, 107 S.Ct. 2019, 2021, 95 L.Ed.2d 594 (1987). In the present case, plaintiff has failed to present any evidence demonstrating that defendants' conduct was racially motivated. The uncontroverted facts establish that defendant Kleoppel did not know and had no reason to know or believe that Dr. Taliaferro was an African American. Likewise, there is no evidence that defendant Osco or defendant DeGoler's were motivated by racial animus when they, through their respective employees, provided information

to the Board at the Board's specific request.

### C. 42 U.S.C. § 1981

In his section 1981 claim, plaintiff alleges that defendants collectively have impaired and deprived him of the same right as enjoyed by white physicians to make and enforce contracts and have subjected him to punishment different from that imposed on white physicians for the same alleged professional misconduct.

■ In order to maintain a cause of action under section 1981, plaintiff must prove, among other things, intentional discrimination on the basis of race. *See General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 387–88, 102 S.Ct. 3141, 3148–49, 73 L.Ed.2d 835 (1982).

■ Mere conclusory allegations of purposeful discriminatory intent do not sustain plaintiff's burden of proof to demonstrate a genuine issue of material fact. *Lewis v. Ft. Collins*, 903 F.2d 752, 759 (10th Cir.1990). In a section 1981 case, plaintiff's burden goes beyond producing "some evidence" and requires that plaintiff prove purposeful discrimination by specific evidence of discriminatory purpose. *Id.; see Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514 (the nonmoving party "may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial").

As stated above, there is no evidence that defendants' actions in supplying information to the Board, at the Board's specific request, were motivated by racial discrimination. The fact that Kile was mistaken when he advised Harman that the prescription for Tylenol 3 was a new prescription rather than a refill does not support plaintiff's contention that Kile's mistake was racially motivated. We conclude that there is no genuine factual issue as to plaintiff's section 1981 claim since the issue of defendants' racial motivation is one that can only reasonably be resolved in favor of defendants. *See Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Summary judgment is granted in favor of defendants on plaintiff's section 1981 claim.

### D. 42 U.S.C. § 1985

Plaintiff claims that all defendants conspired to revoke, suspend or otherwise limit plaintiff's license to practice medicine in Kansas under 42 U.S.C. § 1985. Specifically, plaintiff alleges that "[d]efendants Kl[eo]ppel and Furjanic so conspired in December 1986 by Furjanic's soliciting and Kl[eo]ppel's submission of the complaint" to the Board and that "defendant DeGoler['s] and Osco joined the conspiracy by respectively giving to defendant Harm[a]n as Board investigator a false prescription, ostensibly an original prescription by plaintiff, but for the purpose of affecting plaintiff's license; and defendants DeGoler['s] and Osco thereby agreed to the conspiracy." Pretrial Order at 15.

■ In order to maintain a cause of action under section 1985, plaintiff must show, among other things, that there was a conspiracy which was motivated by racial or other classbased, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). As discussed above, there is no evidence of discriminatory animus toward plaintiff on the part of defendants Osco, DeGoler's or Kleoppel.

■ In order to prove the existence of a conspiracy under section 1985, plaintiff must allege and establish facts showing a meeting of the minds. *See Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230–31 (10th Cir.1990). The Tenth Circuit has held that a section 1985 claim will not lie against a person who has merely furnished information to police officers, or other state officials, during the course of an investigation. *See Benavidez*, 722 F.2d at 618.

■ We find that there is no evidence of any agreement, conspiracy, or any meeting of the minds between the defendant pharmacies and Kleoppel, and the Board and defendant Board members. As stated above, defendants Osco, DeGoler's and Kleoppel were merely furnishing information to the Board during the course of its investigation of plaintiff. Thus, under *Benavi-*

*dez,* plaintiff may not maintain a section 1985 action against these defendants. Moreover, it is uncontroverted that these defendants were not aware that supplying information to the Board could result in the suspension of plaintiff's license. There is no evidence that these defendants agreed or joined a conspiracy to revoke, suspend or otherwise limit plaintiff's license to practice medicine. Since there is no genuine issue of material fact, summary judgment is granted in favor of defendants on plaintiff's section 1985 claim.

*E. State Common Law Claims*

■ Since summary judgment has been granted in favor of defendants on all of plaintiff's federal claims, we decline to exercise jurisdiction over plaintiff's pendent state law claims and dismiss plaintiff's state law claims against these defendants.

The court's decision renders moot the motion (Doc. 246) of defendant Degoler's, Inc., to strike the affidavit of Dr. Taliaferro which is a part of plaintiff's response to the defendants' motions for summary judgment. The motion (Doc. 249) of defendants James P. Kleoppel and Osco Drug, Inc., joining in the motion to strike is likewise rendered moot. This does not mean that the court approves of a motion to strike as an appropriate method for taking issue with an affidavit which a party claims contains inadmissible evidentiary material.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants James P. Kleoppel's and Osco Drug, Inc.'s motion for summary judgment (Doc. 194) is granted. Defendant DeGoler's, Inc.'s motion for summary judgment (Doc. 196) is granted. Defendants Kleoppel, Osco and DeGoler's are hereby dismissed from this case.

IT IS SO ORDERED.