NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0502n.06

Nos. 11-1092; 11-1699

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| KRISTY J. DOWNING, | ) | **FILED**<br><br>*May 15, 2012*<br><br>LEONARD GREEN, Clerk |
| Plaintiff-Appellant, | ) |  |
|  | ) |  |
| v. | ) | On Appeal from the United States |
|  | ) | District Court for the Eastern |
| LIFE TIME FITNESS, | ) | District of Michigan |
|  | ) |  |
| Defendant-Appellee. | ) |  |

Before:     BOGGS, SUHRHEINRICH, and COOK, Circuit Judges.

**PER CURIAM**

Kristy J. Downing appeals the district court's orders denying her motion for a preliminary injunction, rejecting her objections to a protective order, and denying her motion to stay, as well as its summary judgment in favor of Life Time Fitness, Inc. (LTF). For the reasons set forth below, we affirm.

**I.**

LTF operates health clubs. In August 2008, Downing, an attorney who is representing herself in this action, became a member of LTF and began using its facilities in Canton and Novi, Michigan. In November 2009, Downing underwent fitness assessments at LTF. Shortly thereafter, Downing filed a complaint in small claims court against LTF, claiming harassment. Downing specifically alleged that LTF provided her with fraudulent fitness advice and directed its employees

to stalk her while she worked out and to aggressively greet her so as to intimidate her. Downing removed her lawsuit to the Wayne County Circuit Court and amended her complaint to allege race and gender discrimination under state and federal law. LTF removed the case to the district court. In the meantime, LTF terminated Downing's membership. Downing continued to come onto LTF's premises and refused to leave, resulting in her arrest by the Canton Police Department for trespass.

Downing's third amended complaint asserted nine claims against LTF: (1) race and gender discrimination in provision of services, facilities, and accommodations; (2) false arrest, false imprisonment, and malicious prosecution; (3) intentional and reckless infliction of emotional distress; (4) negligence; (5) defamation and invasion of privacy; (6) breach of contract; (7) fraud; (8) due-process and First Amendment violations; and (9) civil stalking. She sought injunctive and declaratory relief, damages in the amount of $631,550, attorney's fees, and costs.

The district court denied Downing's motion for a preliminary injunction, and she appealed (No. 11-1092). The district court subsequently rejected Downing's objections to a protective order with respect to the deposition of a witness and denied as moot her motion to stay the proceedings pending resolution of her objections. After granting LTF's motion for summary judgment, the district court entered a judgment dismissing Downing's claims, and she appealed (No. 11-1699). We consolidated Downing's cases for submission.

## II.

### A.      Protective Order

Downing sought to take the deposition of Sandy Schmidt, the general manager of LTF's club in Novi. LTF moved for a protective order, asserting that Schmidt would not be available

at any time in the near future due to a serious medical condition, and submitted a letter from Schmidt's doctor to the magistrate judge for *in camera* review. After reviewing the doctor's letter and conducting a hearing, the magistrate judge granted the protective order, but provided that LTF could not use Schmidt's testimony at trial until she was made available for a deposition. Downing objected to the protective order and moved to stay the proceedings pending resolution of her objections. After reviewing the doctor's letter and hearing oral argument, the district court rejected Downing's objections, finding that Schmidt was unable to testify and that the condition on the use of her testimony at trial represented a fair balancing of Downing's discovery needs against the burden such discovery would impose. The district court denied as moot Downing's motion to stay.

"The decision to grant a protective order will be disturbed on appeal only upon a finding of an abuse of discretion." *Samad v. Jenkins*, 845 F.2d 660, 663 (6th Cir. 1988). Downing argues that in camera review of the doctor's letter was inappropriate under HIPAA regulations, but the regulation that she cites has no bearing on this issue. Downing does not cite any authority entitling her to the specifics of Schmidt's medical condition. Downing also contends that Schmidt has personal knowledge of information relevant to her claims, but fails to show any prejudice at this stage in the litigation. The summary-judgment rules required that the district court view the facts in the light most favorable to Downing, who did not file a Rule 56(d) affidavit asserting that facts necessary to oppose LTF's summary judgment motion were unavailable to her. We can find no abuse of discretion, particularly in light of the protective order's condition on the use of Schmidt's testimony at trial.

**B.     Summary Judgment**

We review *de novo* the district court's decision to grant summary judgment in favor of LTF. *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**1.     Negligence and Defamation**

As an initial matter, Downing's opening brief does not address the dismissal of her negligence and defamation claims.  We consider those claims abandoned.  *See Hills v. Kentucky*, 457 F.3d 583, 588 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).

**2.     Discrimination and Retaliation**

Downing claimed race and gender discrimination in violation of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101–.2804, the Civil Rights Act, 42 U.S.C. §§ 1981 and 2000a, and Michigan common law.  Because Downing presented no direct evidence of race or gender discrimination, the district court properly analyzed her claims under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  To demonstrate a prima facie case under that framework, Downing must show that:  (1) she belongs to

a protected class; (2) she "sought to make a contract for services ordinarily provided by the defendant"; and (3) she was "denied the right to enter into a contract for such services while similarly situated persons outside the protected class were not" or she was "treated in such a hostile manner that a reasonable person would find it objectively discriminatory*." Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 639 (6th Cir. 2009).

At the hearing on LTF's summary judgment motion, Downing conceded that she could not name any non-protected person who was treated differently. Downing also failed to demonstrate "markedly hostile" conduct on the part of LTF—conduct that "is (1) so profoundly contrary to the manifest financial interests of the merchant and/or [its] employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 871 (6th Cir. 2001) (quoting *Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694, 708 (D. Md. 2000)). As evidence of LTF's discriminatory harassment, Downing asserted that: LTF's employees frequently asked how she was doing in a "sarcastic" manner and made "degrading" remarks about her going through a lot or "hanging in by a thin thread," giving her "negative energy"; employees laughed or looked at her when she passed by; employees positioned themselves so as to place themselves in her line of sight or to force an interaction with her; a male African-American employee in plainclothes watched her swim; a male African-American employee texted her late at night to invite her to play basketball; a male African-American employee told her that he was an assassin; and when she purchased a fitness assessment, LTF provided her with "illegitimate" results and advice, undermining her efforts to lose weight. We agree with the district court that, viewing the facts in

the light most favorable to Downing, LTF's alleged conduct could not support a rational inference of race or gender discrimination. While Downing herself disliked interacting with LTF's employees and disagreed with their fitness recommendations, a reasonable person would not find their conduct so contrary to LTF's financial interests, so outside of business norms, or so arbitrary that it was objectively discriminatory.

Downing also claimed that LTF terminated her membership in retaliation for filing this lawsuit and reporting race discrimination. To maintain such a claim under Michigan's Elliott-Larsen Civil Rights Act, Downing must show: "(1) that [s]he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an . . . action adverse to [her]; and (4) that there was a causal connection between the protected activity and the adverse . . . action." *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 653 (Mich. 2005). "The conduct of [a plaintiff] cannot be opposed to a violation of the CRA unless it refers to some action of the [defendant] that the [plaintiff] reasonably believes is unlawful." *Gray v. Mich. Minority Bus. Dev. Counsel*, No. 276693, 2008 WL 4276618, at *1 (Mich. Ct. App. Sept. 18, 2008); *see also Burkhardt v. Blue Cross Blue Shield of Mich.*, No. 197988, 1999 WL 33455100, at *1 (Mich. Ct. App. Jan. 22, 1999). Likewise, under Title VII, "[a] plaintiff must demonstrate that her opposition was reasonable and based on a good-faith belief that the [defendant] was acting in violation of [the federal civil rights statute,] Title VII." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009); *see also McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) (Garland, J.); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000) ("In short, the only qualification that is

placed upon [a plaintiff's] invocation of protection from retaliation under Title VII's opposition clause is that the manner of his opposition must be reasonable.").

This limiting principle dooms Downing's retaliation claim. As we observed earlier, the record is devoid of evidence that could lead a rational person to believe that race or gender discrimination occurred. Downing, therefore, cannot establish a prima facie case of retaliation. Our analysis is not precisely the same as the district court's, but we must affirm if the lower court's decision was "correct for any reason, including a reason not considered by the lower court." *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co* ., 772 F.2d 214, 216 (6th Cir. 1985).

### 3. False Arrest, False Imprisonment, and Malicious Prosecution

In support of her false-arrest, false-imprisonment, and malicious-prosecution claims, Downing alleged that LTF caused her to be arrested for "unmerited claims of trespass." Under Michigan law, to prevail on any of these claims, Downing must show a lack of probable cause. *See Matthews v. Blue Cross & Blue Shield of Mich.*, 572 N.W.2d 603, 610 (Mich. 1998); *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich. Ct. App. 2003). "[T]he question of probable cause is an objective test that involves only the conduct of a reasonable man under the circumstances" and requires "such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the person arrested is guilty of the offense charged." *Matthews*, 572 N.W.2d at 614 (internal quotation marks and footnote omitted).

We agree with the district court that the facts, viewed in the light most favorable to Downing, establish that LTF's employees had probable cause to believe that Downing was

trespassing. After LTF informed Downing that her membership had been terminated and that she was no longer permitted to enter LTF's premises, she attempted to use the facilities. Under these circumstances, a reasonable person would have believed that Downing was trespassing. Summary judgment on Downing's false-arrest, false-imprisonment, and malicious-prosecution claims was appropriate.

Downing alleged that LTF pursued the trespassing claims against her in retaliation for this lawsuit. According to the Michigan courts, however, "[i]f probable cause is found, the actual motive behind the complaint may not be relevant," as "[w]ant of probable cause may not be inferred from malice." *Id.* at 610 n.14 (internal quotation marks omitted).

According to Downing, the trespass ordinance's prohibition on entering or remaining on the premises of another "without lawful authority" is unconstitutionally vague. Downing did not make this argument below, and we therefore deem it forfeited. Downing instead argued that, under *Bouie v. City of Columbia*, 378 U.S. 347 (1964), criminal trespass requires a breach of the peace. The district court correctly rejected this argument because *Bouie* held that a state could not change its longstanding interpretation of its criminal trespass law—an interpretation requiring a breach of the peace—without violating due process. *See id.* at 354–55 ("When a[n] . . . unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime."). In assessing the state's evolving definition of criminal trespass, the *Bouie* Court noted the traditional, common-law distinction

between criminal and civil trespass: a breach of the peace. *See id.* at 357–58. It did not hold that states' criminal trespass laws must always require a breach of the peace.

### 4. Intentional or Reckless Infliction of Emotional Distress

To establish a claim for intentional or reckless infliction of emotional distress under Michigan law, Downing must demonstrate four elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985). Downing's allegations amount to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" to which liability does not extend. *Id.* at 909 (quoting Restatement (Second) of Torts § 46 cmt. d). In addition, Downing's embarrassment does not rise to the level of severe emotional distress necessary to support a claim for intentional or reckless infliction of emotional distress. *See id.* at 912. Summary judgment on this claim was appropriate.

### 5. Invasion of Privacy

To state a claim for invasion of privacy based on an intrusion upon her seclusion, Downing must show: "(1) an intrusion by defendant; (2) into a matter which plaintiff has a right to keep private; (3) by the use of a method which is objectionable to the reasonable person." *Lewis v. Dayton Hudson Corp.*, 339 N.W.2d 857, 859 (Mich. Ct. App. 1983). Downing alleged in her complaint that LTF "used devices to surveillance [sic] Plaintiff while at their centers without Plaintiff's knowledge or permission," but failed to present any evidence calling into question LTF's representation that no audio or video recording devices were used at the Canton club while Downing was a member. In her appellate brief, Downing asserts that LTF's employees took her cell phone

from her locker and deleted text messages while she was working out. Downing offers no evidence, only speculation, in support of this allegation. Accordingly, the district court properly granted summary judgment in favor of LTF on Downing's invasion-of-privacy claim.

### 6. Breach of Contract

Downing alleged that LTF breached the Member Usage Agreement by terminating her membership in bad faith. The agreement stated: "Life Time Fitness may terminate my membership or any member at any time for failure to comply with any of the rules and regulations adopted by Life Time Fitness or for conduct Life Time Fitness determines to be improper or contrary to the best interests of Life Time Fitness." Downing conceded that this language could be interpreted to give LTF "unbridled discretion" in terminating her membership, but asserted that LTF was required to do so in good faith. Although Michigan law does not recognize an independent cause of action for breach of the implied duty of good faith, *see Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 279 (Mich. Ct. App. 2003), a party can breach its contractual obligations by performing in bad faith, *see Lowe's Home Ctrs., Inc. v. LL & 127, LLC*, 147 F. App'x 516, 523-24 (6th Cir. 2005) (collecting Michigan authority recognizing an implied duty of good faith in the performance of a contract, despite the absence of an independent cause of action). Given Downing's documented hostile relationship with LTF and the absence of evidence indicating that LTF acted in bad faith when it terminated her membership, we agree with the district court that she has not presented a genuine issue of fact of LTF's bad faith.

Downing also alleged that LTF breached an oral agreement to provide fitness assessments by giving her inaccurate results and advice. In support of her allegations, Downing

submitted "Plaintiff's Memorandum on Defendant's Fitness Exams," which set forth her own analysis of the fitness assessment reports provided by LTF and her own conclusions that LTF provided incredible information and advice with respect to those assessments. The district court sustained LTF's objection to Downing's memorandum, noting that Downing, as a lay witness, could not give an opinion "based on scientific, technical, or other specialized knowledge," Fed. R. Evid. 701(c), and that she failed to show that she possessed expertise in performing or analyzing the fitness assessments at issue to qualify as an expert, *see* Fed. R. Evid. 702.

We review the district court's decision to exclude Downing's memorandum for an abuse of discretion. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010). Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion." At the hearing on LTF's summary-judgment motion, Downing pointed to her college mathematics courses and mechanical engineering degree, but failed to present any evidence of her specialized knowledge with respect to fitness assessments. Accordingly, the district court did not abuse its discretion in excluding Downing's memorandum. And with no other evidence that the results of Downing's fitness assessments were inaccurate, summary judgment in favor of LTF on this breach-of-contract claim was appropriate.

### 7.     Fraud

Downing alleged in support of her fraud claim that LTF "purposefully provided inaccurate results and advice" with respect to the fitness assessments. Like her breach-of-contract claim, Downing's fraud claim fails because she provides no admissible evidence that LTF's results

and advice were false. *See Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 165 (Mich. Ct. App. 2008) (holding that fraud claim requires proof that the defendant made a material representation that was false).

### 8. Freedom of Association and Due Process

In support of her constitutional claims, Downing asserted that LTF terminated her membership and caused her to be arrested for trespass in violation of her right to freedom of association under the First Amendment, and that LTF failed to provide her with a hearing before terminating her membership, in violation of her right to due process under the Fifth and Fourteenth Amendments. To state a constitutional claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A private party's actions constitute state action under section 1983 where those actions may be 'fairly attributable to the state.'" *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982)).

Downing alleged that LTF used the Canton Police Department to arrest her for trespass. Reporting a crime to the police does not expose a private party to liability under § 1983. *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983). In her appellate brief, Downing contends that LTF also acted with the Canton Police Department in refusing to document her concerns about Jeff Morton, an LTF employee. Downing, however, points to no evidence of LTF's involvement in the police department's documentation of her complaint. Because there are no facts indicating that LTF acted

"under color of state law," the district court properly granted summary judgment in favor of LTF on

Downing"s constitutional claims.

### 9. Civil Stalking

Michigan Compiled Laws § 600.2954(1) provides a civil action for stalking.

"Stalking" is defined as "a willful course of conduct involving repeated or continuing harassment

of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated,

threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened,

intimidated, threatened, harassed, or molested." Mich. Comp. Laws § 750.411h(1)(d).

In support of her civil-stalking claim, Downing alleged that LTF's employees went

out of their way to follow her around the facilities and appear in her line of sight. We agree with the

district court that a reasonable person would not feel terrorized or intimidated by this conduct.

### C. Preliminary Injunction

Downing moved for a preliminary injunction to prevent LTF from cancelling or

denying her membership, refusing to contract with her, pursuing criminal-trespass complaints against

her, and harassing her. The district court balanced the four traditional preliminary-injunction factors

in denying Downing's motion: "(1) whether the movant has a strong likelihood of success on the

merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the

injunction would cause substantial harm to others; and (4) whether the public interest would be

served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir.

2012). We review the district court's balancing of those factors and its ultimate determination for

an abuse of discretion. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007).

The district court concluded that Downing failed to demonstrate a strong likelihood of success on her breach-of-contract and retaliation claims. We review that conclusion *de novo*. *Id.* As discussed above, Downing did show a strong likelihood of success on her retaliation claim because LTF's letter terminating her membership provided direct evidence of retaliatory intent.

We turn to the remaining three factors. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). While a plaintiff can demonstrate irreparable harm if the plaintiff's claim is based on a constitutional violation, *see id.*, Downing's constitutional claims fail because LTF is not a state actor. Downing, who has since joined another fitness club, failed to demonstrate that her alleged harm cannot be compensated by monetary damages. The district court found that the risk of harm weighed in LTF's favor. Given Downing's extreme views about what conduct constitutes harassment, LTF's employees would be unable to do their jobs in her presence. Finally, we agree with the district court that the public interest would not be served by a preliminary injunction in this case. Consideration of the other factors leads us to conclude that the district court did not abuse its discretion in denying a preliminary injunction.

**III.**

For the foregoing reasons, we AFFIRM the district court's orders in full.