Richard OCCHINO, Plaintiff,

v.

William LANNON; Steven LaTour; Cheryl Tallberg; and Dennis Lamkin, Defendants.

Civ. No. 5–92–145.

United States District Court,
D. Minnesota,
Fifth Division.

May 17, 1993.

Richard Occhino, pro se.

Douglas E. Nepp and Steven W. Schneider, Halverson, Watters, Bye, Downs, Reyelts & Bateman, Duluth, MN, for defendant Tallberg.

Raymond L. Tahnk–Johnson, Hayes & Associates, Eagan, MN, for defendant Lamkin.

M. Alison Lutterman, Office of City Atty., Duluth, MN, for defendants Lannon and LaTour.

ORDER and REPORT AND
RECOMMENDATION

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the following Motions:

1. A Motion by the Plaintiff to Amend his Complaint to allege a conspiracy.

2. A Motion by the Defendant Cheryl Tallberg ("Tallberg") to Dismiss.

3. A Motion by the Defendant Dennis Lamkin ("Lamkin") to Dismiss.

4. A Motion by the Defendant William Lannon ("Lannon") and the Defendant Steven LaTour ("LaTour") to Dismiss.

5. A Motion by the Defendants to Compel the Plaintiff to execute authorizations with which the Defendants may review his record of prior incarcerations and his past medical records.

6. A Motion by the Plaintiff to compel an independent psychological examination of Tallberg.

Hearings on the Motions were held on January 28, and on May 6, 1993, at which the Plaintiff appeared *pro se;* Tallberg appeared by Douglas E. Nepp and Steven W. Schneider, Esqs.; Lamkin appeared by Raymond L. Tahnk–Johnson, Esq.; and, Lannon and LaTour appeared by M. Alison Lutterman, Esq.

For reasons which follow, we deny the Plaintiff's Motion to Amend his Complaint, and we recommend that the Defendants' Motions for Dismissal or for Summary Judgment be granted.[1]

---

1. In view of our recommendations, a ruling upon the discovery Motions that the parties have filed is unnecessary, and those Motions are denied as moot. Nevertheless, in the interests of completeness, we will address those Motions briefly.

Early in these proceedings, the Plaintiff filed a Motion to Compel Lannon and LaTour to answer his discovery requests. The Plaintiff never requested a Hearing date for the Motion, and the Defendants have not submitted any responding memoranda. We are not aware of the extent to which the Motion has remained unresolved, although we do note that the Plaintiff did not mention the pendency of this Motion during the Discovery Conference that was held on May 6,

1993. To the extent that the Plaintiff's Motion is still viable, we would deny the requested discovery on the basis of the Court's holding in *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982).

If called upon to rule on the matter, we would deny the Defendants' Motion to Compel the execution of authorizations for the inspection of the St. Louis County Jail's records relating to the Plaintiff's incarceration on May 22, 1991, since the Plaintiff's Complaint does not allege any action arising from the length or the conditions of his detainment in the County Jail. Those records, therefore, have no apparent relevance to these proceedings.

## II. Factual and Procedural Background

By his Complaint, the Plaintiff alleges the jurisdictional bases of his action in the following terms:

This action is brought pursuant to 42 U.S.C. Sections 1981, 1983, 1985(3), 1988 and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and the First, Second, Third, Sixth, Seventh, Eighth and Tenth Sections of Article I of the Constitution of the State of Minnesota, and under the provision of Minnesota Statutes which prohibit the aforesaid conduct.

\* \* \* \* \* \*

The jurisdiction of this Court is predicated on 28 U.S.C. Sections 1343(3) and (4) and 1331 and the pendent jurisdiction of the United States Courts.

In support of these claims, the Plaintiff alleges that, on May 22, 1991, Tallberg overheard the Plaintiff making a telephone call to the Federal Communications Commission from a public pay phone which was located in the lobby of the Ordean Building, where Tallberg's place of employment, with the Program for Aid to Victims of Sexual Assault, was located in a second floor office.

As alleged by the Plaintiff:

Without cause or justification and with intent to deprive plaintiff of his federal and state constitutional rights and in violation of Minnesota state law, defendant Tallberg called the police department and complained to the department about plaintiff's use of said public telephone and intentionally misrepresented to the police the tone and content of the plaintiff's telephone call. Defendant Tallberg called the police on the direction of defendant Lamkin, who had instructed Tallberg to call the police if plaintiff used the public phone in the public area of the building, or even if he is in the building.

In response to Tallberg's telephone call, Lannon and LaTour, who are officers with the City of Duluth Police Department, arrived at the Ordean Building. Again, in the Plaintiff's words:

Defendants Lannon and LaTour responded to the call and arrested plaintiff for disorderly conduct. The police officers then handcuffed and searched plaintiff. They then escorted plaintiff to the door of the building. Once outside the building, defendant Lannon again searched plaintiff. At that point, defendant LaTour stated, "Don't you think we should search him once more just for practice?" Defendant LaTour then proceeded to do another full search of plaintiff. * * * As the officers were placing plaintiff in the back seat of the police car, plaintiff asked the officers if they were not going to read him his *Miranda* rights. Defendant Lannon replied that plaintiff did not need them and that he had been watching too much TV. He then said, "Occhino, you are a nut. You are not from this planet." Plaintiff replied, "You are paranoid; you did not even know enough to read me my *Miranda* rights when I was arrested." Officer Lannon responded, "We will see who the nut is. There are homosexuals in jail who are just looking for fresh blood like you."

Thereafter, the Plaintiff was taken to the St. Louis County Jail, where he was charged with disorderly conduct in violation of Minnesota Statutes Section 609.72.[2] The Plaintiff

---

We would grant the Defendants' Motion to compel the Plaintiff to sign medical authorizations pursuant to Rule 35, Federal Rules of Civil Procedure. At the Hearing on this Motion, the Plaintiff confirmed that he is seeking a monetary award for "psychological damage" which he attributes to the actions of the Defendants. He also verified that he intends to call Dr. Gary Cowan, his treating psychiatrist, to testify as an expert witness. Having placed his psychiatric condition in controversy, the Defendants are entitled to discover the effects and etiology, if any, of that condition.

With respect to the Plaintiff's Motion that Tallberg be required to submit to an independent psychiatric examination, premised upon the Plaintiff's belief that she is "paranoid,"—at least according to his reading of a dictionary definition of that term—we find the Motion to be baseless. Tallberg has not placed her medical or psychiatric condition into controversy and we are not aware of any authority—nor has the Plaintiff provided any—which would require an independent psychiatric examination for any of the reasons that the Plaintiff has advanced.

**2.** In pertinent part, Section 609.72 provides:

Whoever does any of the following in a public or private place, knowing or having reasonable

was held in the custody of the County Jail for a period of 20 hours.

Prior to the time of his trial, the City Attorney dropped the statutory charge and recharged the Plaintiff with two misdemeanor counts of disorderly conduct under the Duluth City Ordinance, one count of resisting arrest, and one count of obstructing an officer. Following a trial before the Honorable Robert V. Campbell in the State District Court for the County of St. Louis, Minnesota, the Plaintiff was acquitted of the disorderly conduct and resisting arrest charges, but he was found guilty of obstructing a peace officer in violation of Section 34–4(a) of the Duluth City Code.[3] A violation of Section 34–4(a) carries a fine, but no incarceration and, following the finding of guilt, the State District Court imposed a fine of $200.

Subsequently, the Plaintiff moved the Court for a Judgment of Acquittal, for a New Trial, or for sentencing credit on account of the time that he had spent in the St. Louis County Jail. The State Court denied the Motions for Acquittal and for a New Trial, but granted the sentence credit and stayed the imposition of the fine of $200. An appeal was taken by the Plaintiff to the Minnesota Court of Appeals, which affirmed his finding of Guilt. Thereafter, the Minnesota Supreme Court denied the Plaintiff's Petition for further review. See, *City of Duluth v. Occhino*, 1992 WL 122591 (Minn.App.1992), pet. for rev. denied (Minn. August 4, 1992) (unpublished opinion).

Based upon the foregoing allegations, the Plaintiff claims that the Defendants have denied him his First Amendment right to freedom of expression, his Fourth Amendment right to be free from unlawful seizure of his person, his Fifth and Fourteenth Amendment rights to due process of law, including the right to be free from unjustified and excessive force utilized by police and intentional harassment by the police, and false arrest, malicious prosecution and malicious abuse of process without probable cause. In addition, under the "supplemental jurisdiction" of the Federal Courts, the Plaintiff alleges causes of action under the laws of the State of Minnesota for false arrest and imprisonment, assault and battery, malicious prosecution, malicious abuse of process, prima facie tort, conspiracy tort, negligence, and gross negligence. See, *Title 28 U.S.C. § 1367(a)*.

Although we are mindful of our obligation to construe the allegations of a *pro se* Complaint indulgently, there are limits to such a liberalized interpretation, and we feel that this case unmistakably breaches those limits. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam); *Holt v. Caspari*, 961 F.2d 1370, 1372 (8th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992); *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir.1988). Ordinarily, when considering dispositive Motions, we would take the well-pleaded allegations of the Complaint as true, and we would construe the Complaint, and all reasonable inferences arising therefrom, most favorably to the Plaintiff. See, *St. Paul Ramsey County Medical Center v. Pennington County*, 857 F.2d 1185, 1188 (8th Cir. 1988), quoting *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). To do so here, however, would impardonably traverse Congress' intent, as expressed in the Full Faith and Credit Statute, that "[a] federal court must give to a state court judgment the same

---

grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:

\* \* \* \* \* \*

(3) Engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger or resentment in others.

3. Section 34–4(a) provides, in pertinent part:
(a) No person shall intentionally do an act which he should reasonably expect will obstruct or interfere with, or induce another to obstruct or interfere with, a peace officer or other public official in discharging or attempting to discharge a duty of his office. for the purposes of this section, the duties of a peace officer shall include, but not be limited to, the following:

(1) Apprehending a criminal or suspected criminal;

\* \* \* \* \* \*

(4) Investigating a crime which has been committed or conduct which he reasonably believes may constitute a crime.

preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Title 28 U.S.C. § 1738*.[4] Each of the Defendants in this action was called to testify in the State Court proceeding that resulted in the Plaintiff's conviction, and the facts which underlie that conviction have been carefully weighed by the State Courts of Minnesota in rendering its final judgment which, we believe, is adverse to the claims that the Plaintiff raises here. We are not at liberty to trivialize those State Court proceedings and we address their impact as it becomes relevant to the remainder of this Report.[5]

Among other Findings, the State District Court determined that, since January of 1991 to the date of the Plaintiff's arrest, Tallberg had observed the Plaintiff using the telephone involved here from 2 to 3 times a week. The State Court found that the Plaintiff "was often loud, abusive and threatening on the phone." Tallberg was scared by the Plaintiff's actions and she was concerned for the clients of her office who, having been victims of sexual assaults, were "emotionally fragile." During a meeting of the tenants' at the Ordean Building, Tallberg had previously complained to Lamkin, who was a representative of the managers of the Building, about the Plaintiff's "loud and abusive language on the phone."[6] Lamkin instructed Tallberg that she was authorized to contact his office or the Duluth Police to have the Plaintiff removed from the building if he was again engaged in disturbing conduct.

The State Court described Tallberg's involvement in this matter in the following Finding of Fact:

> On May 22, 1991, Ms. Tallberg heard the [Plaintiff] on the phone as she came down the stairs to the first floor. She said he was "incredibly loud, practically screaming." She went outside, had a cigarette and returned five minutes later. She again listened to the [Plaintiff]. He was loud and threatening bodily harm over the phone. She heard him say things about: "the Posse Comitatus," "the Jews running the banks," "tax protesters" and he was screaming about "lawyers."
>
> Ms. Tallberg went up the stairs and tried unsuccessfully to call Lamkin and then called 911 and reported that there was a verbally abusive man using the public phone in the lobby of the Ordean building and she wanted him removed. She said she was tired of listening to him making death threats and wanted protection for herself and the clients.

The State Court further found that Lannon and LaTour were dispatched to the Ordean Building because of a "person disturbing."

---

**4.** Section 1738 provides in part:

> The records and judicial proceedings of any court of any * * * State * * * shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State.

Section 1983 actions are not excepted from the full impact of this clause, and State Court Judgments in such actions may not be heedlessly ignored. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

**5.** In support of their Motion to Dismiss, Lannon and LaTour and Deputy City Attorney Bryan F. Brown have submitted Affidavits which independently corroborate the principal factual findings of the State District Court. Counsel for Lamkin has also presented an Affidavit which attaches portions of Lamkin's sworn testimony during the State criminal proceeding. Accordingly, our rec-

itation of the factual determinations of the State Courts is further impelled by the final sentence of Rule 12(b), Federal Rules of Civil Procedure, which converts a Motion to Dismiss to one for Summary Judgment if the Court is presented with materials outside of the pleadings, and if all parties are given a reasonable opportunity to respond to those materials. The Affidavits in question were filed with the Court several months ago, were expressly proffered in accordance with the provisions of Rule 56, and yet, they have gone unrebutted by any Affidavit evidence from the Plaintiff.

**6.** Lamkin testified that the concern expressed at the tenants' meeting was as to an anonymous telephone user who had been repeatedly loud and disturbing. According to Lamkin, he was not aware that the anonymous individual was, in reality, the Plaintiff. According to Lamkin, he advised that the tenants should contact the Duluth Police if anyone were disturbing them within the public areas of the Ordean Building.

When they arrived at the building, LaTour heard a person "yelling and screaming on the phone," and Lannon described the Plaintiff as "loud and argumentative" on the phone, and as one who was "disturbing to others." LaTour proceeded to the second floor to speak with Tallberg who advised that the Plaintiff was "a continuing problem, that he was argumentative and abusive, and she was very afraid of him." She also advised that a tenants' meeting had been held and that she was given authority by Lamkin to have the Plaintiff removed. Tallberg stated that "all we want is for him to leave the building."

During the time that LaTour was speaking with Tallberg, Lannon stood and listened to the Plaintiff. As found by the State Court:

> [Lannon] described the [Plaintiff's] talk as loud and abusive but he did not hear any threats or profanity. He observed that other people coming and going were disturbed. Lannon waited for his partner and listened. He wanted some basis upon which to remove the [Plaintiff]. Officer LaTour and Ms. Tallberg came down the elevator; she I.D.'d the [Plaintiff] and said he does this all the time. The officers reasonably believed that Ms. Tallberg had authority to order the [Plaintiff] out of the building and thus the owners wanted him out.

According to the factual findings of the State Court, Lannon asked the Plaintiff to put the telephone down, but the Plaintiff responded, "I won't do what you say" and then proceeded to talk even louder and with more agitation. A second request for the phone was refused, after which Lannon took the phone, verified with the operator that the Plaintiff had not threatened her, and then hung up the phone.

When Lannon asked the Plaintiff to leave the building, the Plaintiff refused and questioned the basis for the request. Lannon responded that the owners of the building wanted him removed, to which the Plaintiff commented that they had no right to ask him to leave and he would only leave if the owners themselves made the request. During this exchange, the Plaintiff "got louder and louder." Again, quoting from the State Court's factual findings:

> Lannon put his hand on [Plaintiff's] arm to escort him out. [Plaintiff] physically raised his hand and put it out toward the police. Both officers believed he pushed Lannon two times. Another eyewitness, Jo Ellen Cox, said the motion of [Plaintiff's] upraised hand was as if to "shoo them away." The [Plaintiff] then put his hands in his pockets. The officers told him to remove them; he refused. They repeated the request and he took one hand out but kept the other in his pocket and said, "why?" The officers said, "we don't know if you have a knife in your pocket." They believed he had a weapon. The [Plaintiff] said, "I am not going to take my hand out." The [Plaintiff] stepped back and assumed a defiant threatening stance. The officers then took him by the arms. One reached into the pocket from which he refused to remove his hand and retrieved a pocket knife. When closed the knife was 3 inches long. When open, it [was] 5⅛ inches long.

The State Court went on to find that the officers took the Plaintiff by the arms, cuffed him, and led him out of the building, and that the "situation required the police officers to do something and the only reasonable couse [sic] of conduct was to remove the [Plaintiff] from the building."

Based upon these facts, the State Court found "by proof beyond a reasonable doubt that [Plaintiff] did intentionally obstruct and interfered with, both verbally and physically, police officers Lannon and LaTour in discharging or attempting to discharge a duty of their office contrary to Section 34–4(a) of the Duluth City Code 1959 as amended." It was the State Court's determination that the Plaintiff had acted intentionally and that he had physically obstructed or interfered with the officers in the· performance of their duties.

On appeal to the Minnesota Court of Appeals, the Plaintiff contested the adequacy of the record to support his conviction. In rejecting that challenge, the Court of Appeals held:

> The police officers were investigating appellant's behavior which they reasonably believed constituted the crime of disorder-

ly conduct. They were in the process of apprehending and transporting appellant. Therefore, when he refused the police officers' request to hang up the telephone and leave the building, became defiant and raised his hand toward them, appellant interfered with the officers' attempts to discharge their official duties.

Appellant's argument that only the building's owner, not the police officers, had the authority to ask him to leave is unpersuasive. One of the essential sticks in the bundle of property rights is the right to exclude others. *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 82, 100 S.Ct. 2035, 2041 (1980). The owner of the building hired a manager who authorized the tenants to call either himself *or* call the police to have appellant removed if he bothered them again. Therefore the complaining tenant had authority to act in the owner's place, and the Duluth police officers justitifiably [sic] relied upon that authority in removing appellant from the premises.

The Court of Appeals also concluded that the Plaintiff appeared to have intended his acts for "he should have reasonably expected that refusing to hang up the phone, refusing to leave the building, becoming defiant and raising his hand toward the officers would interfere with their attempts to discharge their duties."

As noted, by Order dated August 4, 1992, the Minnesota Supreme Court denied the Plaintiff's Petition for further review. No appeal was taken from that denial, and this action was commenced on September 1, 1992.

### III. *Discussion*

We may commence our analysis with a winnowing of those claims which are clearly without merit, reserving our analysis of the Plaintiff's Section 1983 and his State Law claims to the last. Accordingly, our analysis begins with the Plaintiff's claims under the provisions of Title 42 U.S.C. §§ 1981 and 1985(3).

*A. Title 42 U.S.C. § 1981.*

■■■ 1. *Standard of Review.* Section 1981 was enacted "to protect identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987), reh'g. denied, 483 U.S. 1011, 107 S.Ct. 3244, 97 L.Ed.2d 749 (1987). At a minimum, Section 1981 reaches discrimination against an individual because he or she is genetically part of an ethnically and physiognomically distinctive subgrouping of Homo sapiens. *Id.* Although a distinctive physiognomy is not essential to qualify for Section 1981 protection, intentional discrimination on a racial basis is. *Patterson v. American Tobacco Co.*, 535 F.2d 257 (4th Cir.1976), cert. denied, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *Boddorff v. Publicker Industries, Inc.*, 488 F.Supp. 1107, 1109–10 (E.D.Penn.1980); cf., *Edwards v. Jewish Hospital of St. Louis*, 855 F.2d 1345, 1349 (8th Cir.1988); *Netterville v. State of Missouri*, 800 F.2d 798, 801 (8th Cir.1986). Consequently, in order to state a cause of action under Section 1981, a plaintiff must allege that the violative acts had racially discriminatory purposes. *Vance v. Bordenkircher*, 533 F.Supp. 429 (N.D.W.Va.1982). Mere conclusory allegations of discrimination are insufficient, *Davis v. Frapolly*, 717 F.Supp. 614, 616 (N.D.Ill.1989), and, where a complaint wholly fails to allege discrimination based upon race, it does not state a claim upon which relief can be granted. *Carrero v. New York City Housing Authority*, 890 F.2d 569, 575 (2d Cir.1989); *Doe v. Thomas*, 604 F.Supp. 1508 (N.D.Ill.1985).

■■ 2. *Legal Analysis.* The Plaintiff's Complaint is devoid of any intimation, let alone an express reference, to a denial of the Plaintiff's rights on the basis of intentional, racial discrimination. Consequently, the Plaintiff has failed to state a claim, under the provisions of Section 1981, upon which relief can be granted against any of the Defendants. The Section 1981 claim should be dismissed.[7]

**7.** We would also note that Section 1981 does not effect a general proscription of racial discrimina-

tion, but is limited to the right to make and enforce contracts without respect to race. *Pat-*

## B. *Title 42 U.S.C. § 1985(3).*

**1. Standard of Review.** Title 42 U.S.C § 1985(3) provides a federal remedy for a conspiracy to violate a person's right to the equal protection of the laws, or to equal privileges and immunities under the laws. *Kush v. Rutledge*, 460 U.S. 719, 726, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). To establish a violation of Section 1985(3), the Plaintiff must allege and prove four elements:

1) a conspiracy;

2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities of the laws;

3) an act in furtherance of the conspiracy;

4) whereby a person is either injured in his person or property, or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983), citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

Section 1985(3) was not intended to apply to all interferences with the rights of others, for it addresses only interferences which are founded upon some class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, supra at 102, 91 S.Ct. at 1798; *Coleman v. Garber*, 800 F.2d 188 (8th Cir.1986); *Maida v. Andros*, 710 F.Supp. 524 (D.N.J. 1988). Whether the shield of Section 1985(3) extends to protect "any class-based animus other than animus against Negroes" remains an open question. *United Brotherhood of*

*Carpenters & Joiners v. Scott*, supra 463 U.S. at 836, 103 S.Ct. at 3360.

**2. Legal Analysis.** We need not, and expressly do not, enter the debate upon the potential breadth of Section 1985(3). See, *Lewis v. Pearson Foundation, Inc.*, 908 F.2d 318 (8th Cir.1990), as withdrawn and replaced by *Lewis v. Pearson Foundation*, 917 F.2d 1077 (8th Cir.1990), cert. denied, —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993); *New York State NOW v. Terry*, 886 F.2d 1339 (2d Cir.1989), cert. denied sub nom., 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Blank v. Heineman*, 771 F.Supp. 1013, 1017 n. 3 (D.Neb.1991). For our purposes, it is sufficient to note that the Plaintiff's Complaint does not allege that he is a member of any class against whom the Defendants bore an invidiously discriminatory animus. In the absence of any factual assertion that there was an unlawful meeting of the minds amongst the Defendants to deprive the Plaintiff of his constitutional rights, the conspiracy claim under Section 1985(3) should be dismissed for failure to state a claim upon which relief can be granted. See, *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir.1985) (per curiam); *Norbeck v. Davenport Community School District*, 545 F.2d 63, 70 n. 6 (8th Cir.1976); *Powell v. Workmen's Compensation Board*, 327 F.2d 131 (2d Cir.1964); *O'Dell v. McSpadden*, 780 F.Supp. 639, 645 (E.D.Mo.1991); *Schweitzer v. Univ. of Texas Health Center at Tyler*, 688 F.Supp. 278 (E.D.Tex.1988); *Weyandt v. Mason's Stores, Inc.*, 279 F.Supp. 283 (W.D.Pa.1968). We, therefore, recommend that the Plaintiff's Section 1985(3) claim also be dismissed.[8]

---

*terson v. McLean Credit Union*, 491 U.S. 164, 181, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989); *Taggert v. Jefferson County Child Support Enforcement Unit*, 935 F.2d 947 (8th Cir.1991). The provisions of Section 1981 are not so broad as to prohibit racial harassment in the workplace, or a racially discriminatory discharge from employment. *Id.* Here, the allegations of the Plaintiff's Complaint reveal no cognizable basis for the invocation of the protections intended by Section 1981, and the Plaintiff has not suggested any in his submissions to this Court.

**8.** The Plaintiff has sought to amend his Complaint so as to incorporate a conclusory allegation that Tallberg and Lamkin conspired with

Lannon and LaTour to deprive the Plaintiff of his constitutional rights. Of course, the failure to allege a "conspiracy" in support of a claim under Title 42 U.S.C. § 1985 is a fatal defect. *Occhino v. Northwestern Bell Telephone Company*, 675 F.2d 220, 225 (8th Cir.1982), cert. denied, 457 U.S. 1139, 102 S.Ct. 2971, 73 L.Ed.2d 1358 (1982), reh'g. denied, 458 U.S. 1133, 103 S.Ct. 19, 73 L.Ed.2d 1404 (1982).

In considering the propriety of an amendment of the pleadings, the policy of the Federal Courts, as exhorted by the Federal Rules, is to "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits," and to avoid an approach which would proscribe the

C. *Title 42 U.S.C. § 1983.*

1. *Standard of Review.* The essential elements of a Section 1983 claim include the following:

 1) that Defendants performed acts or actions under color of federal law;

 2) which resulted in the deprivation of a right, privilege or immunity guaranteed or preserved by the Constitution; and

 3) resultant damage.

See, *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Jenson v. Olson*, 353 F.2d 825, 828 (8th Cir.1965).

Proof that a defendant's action directly caused a deprivation of a right, privilege or immunity secured by the Constitution of the United States, or other Federal law, is thus an essential element of a Section 1983 action. See, *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

2. *Legal Analysis.* For convenience, we address the Plaintiff's Section 1983 claims in two categories: 1) Those that relate to Tallberg and Lamkin, as private citizens; and, 2) Those that relate to Lannon and LaTour as police officers who, at the time of the alleged infractions, were acting in the course and scope of their employment with the City of Duluth.[9]

 a. *The Claims Against Tallberg and Lamkin.*

"In a Section 1983 claim against a private party, a plaintiff will be entitled to relief if he can prove that the private party was a 'willful participant in joint activity with the State or its agents' which activity de-

---

process to a "game of skill in which one misstep by counsel [might] be decisive to the outcome." *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Accordingly, leave to amend a pleading "[should] be freely given when justice so requires." *Rule 15(a), Federal Rules of Civil Procedure.*

 Despite the liberality of amendment which is accorded to pleadings, leave to amend need not be granted where the effort is, at best, a futile exercise because, even as amended, the Complaint would be incapable of withstanding a Motion to Dismiss. *Weimer v. Amen*, 870 F.2d 1400, 1407 (8th Cir.1989); *Holloway v. Dobbs*, 715 F.2d 390, 392–93 (8th Cir.1983); *Jeffers v. Convoy Co.*, 650 F.Supp. 315, 317 (D.Minn.1986). The amendment that the Plaintiff proposes would not rectify the fatal inadequacies we have noted and, to the extent that the proposed amendment is read to implicate the Plaintiff's Section 1985(3) claim, we deny his Motion to Amend.

9. Seeking to take advantage of the final sentence of Rule 12(b), Federal Rules of Civil Procedure, the Defendants have submitted materials outside the pleadings for the Court's consideration. As the subsequent sections of this Opinion shall detail, the Court has considered those submissions and, finding no genuine issue of material fact, has concluded that the Defendants are entitled to Judgment as a matter of law.

 In so concluding, the Court is mindful that Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury to weigh the evidence and to render credibility determinations. *Celotex Corp. v. Catrett*, 477 U.S.

317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Here, the Court has found no triable issues and the Plaintiff has not identified any genuine issue of material fact which would preclude the entry of a Summary Judgment. For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

 As Rule 56(e), Federal Rules of Civil Procedure, makes clear, once the moving party files a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." *Rule 56(e)*, [emphasis supplied]. This the Plaintiff has not done.

 Moreover, a Defendant is entitled to Summary Judgment where the Plaintiff has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, supra 477 U.S. at 322, 106 S.Ct. at 2552. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of [the Plaintiff's] case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552. As this Opinion further addresses, as to several of the claims the Plaintiff has made, there has been a failure on his part to establish essential elements of his proof and, as to those claims, Summary Judgment is appropriate.

prived the plaintiff of a constitutional right." *Murray v. Wal–Mart, Inc.,* 874 F.2d 555, 558–59 (8th Cir.1989), quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). It is universally recognized, however, that the mere furnishing of information to police officers does not constitute joint action under color of State law which renders a private citizen liable under Section 1983. *Sarmiento v. Texas Board of Veterinary Medical Examiners,* 939 F.2d 1242, 1246 n. 5 (5th Cir. 1991); *Daniel v. Ferguson,* 839 F.2d 1124, 1130 (5th Cir.1988); *Sims v. Jefferson Downs Racing Association,* 778 F.2d 1068, 1078–79 (5th Cir.1985); *Mark v. Furay,* 769 F.2d 1266 (7th Cir.1985); *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1352 (7th Cir.1985); *Benavidez v. Gunnell,* 722 F.2d 615, 618 (10th Cir.1983); *Arnold v. International Business Machines,* 637 F.2d 1350 (9th Cir.1981); *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1206 (7th Cir. 1980); *Butler v. Goldblatt Bros., Inc.,* 589 F.2d 323, 326–27 (7th Cir.1978), cert. denied, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979); *Taliaferro v. Voth,* 774 F.Supp. 1326, 1331 (D.Kan.1991); *Young v. Arkansas Children's Hosp.,* 721 F.Supp. 197, 198 (E.D.Ark. 1989); *Parker v. Hearn,* 695 F.Supp. 1421, 1425 (E.D.N.Y.1988); *Kraemer v. Padgett,* 685 F.Supp. 1166, 1168 (D.Kan.1987); *Holdeman v. Consolidated Rail Corp.,* 649 F.Supp. 1188, 1196 (N.D.Ind.1986), aff'd., 840 F.2d 20 (7th Cir.1988). Without more, the mere elicitation of police assistance is not an exercise of official state authority. *Id.*

 In apparent recognition of these authorities, the Plaintiff has moved the Court for leave to amend his Complaint in order to add the following provision:

The hereinabove described actions and omissions by the defendants Tallberg and Lamkin deprived the plaintiff of rights secured to him under 42 U.S.C. §§ 1981, 1983, and 1985(3) and the Constitution of the United States and the Constitution of the State of Minnesota in that they conspired with the defendants Lannon and LaTour to deprive the plaintiff of the rights secured to him by the above statutes and constitutions.

To be sure, a private party who conspires with a state actor may act under color of State law. *Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 149–52, 90 S.Ct. 1598, 1604–1605, 26 L.Ed.2d 142 (1970); *Myers v. Morris,* 810 F.2d 1437, 1467 (8th Cir.1987), cert. denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). Nonetheless, a conspiracy is not presumed from the mere fact that it is alleged. In this Circuit, allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a meeting of the minds. *Bey v. Bridgeton Police Department,* 775 F.Supp. 1255, 1256 (E.D.Mo.1991), citing *Smith v. Bacon,* 699 F.2d 434, 436 (8th Cir. 1983) (per curiam). Allegations of a conspiracy, absent supporting facts, do not establish a claim upon which relief may be granted. *Holbird v. Armstrong–Wright,* 949 F.2d 1019, 1020 (8th Cir.1991); *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir.1988); *Myers v. Morris,* supra at 1467, citing *Malachowski v. City of Keene,* 787 F.2d 704, 710–11 (1st Cir.1986), cert. denied and reh'g. denied, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56, 479 U.S. 1022, 107 S.Ct. 681, 93 L.Ed.2d 731 (1986); *White v. Walsh,* 649 F.2d 560, 561 (8th Cir.1981); *Harley v. Oliver,* 539 F.2d 1143, 1146 (8th Cir.1976).

 Here, the Plaintiff's allegations of a conspiracy are bald and conclusory. The only fact that the Plaintiff supplies which arguably supports an inference of a conspiracy is that Lamkin[10] purportedly advised Tallberg to contact the police if she were

---

10. Lamkin urges the Court to find that no conspiracy could have existed because he testified at the State Court trial, as is reflected in a partial transcript which was filed with this Court, that he had not learned of the Plaintiff's identity from Tallberg, and that the disruptive telephone user was discussed at the meeting of the Ordean Building's tenants without a disclosure of his identity. We find this argument unavailing because the State Court Judge expressly found that "Tallberg complained of [Plaintiff's] loud and abusive language on the phone to Mr. Lamkin, President of Bowman Properties, at a tenants [sic] meeting." For reasons we address elsewhere in this Opinion, we regard the State Court's finding in this respect to be binding upon us.

further bothered by the Plaintiff's use of the telephone at the Ordean Building. As we have noted, however, a private party does not conspire with a state official merely by invoking an exercise of the state official's authority. *Daniel v. Ferguson*, supra at 1130; *Tarkowski v. Robert Bartlett Realty Co.*, supra at 1208. Moreover, the Plaintiff has had months to more definitively allege the factual basis for his conspiracy claim, given the fact that certain of the Defendants had opposed his Motion to Amend his Complaint on the specific grounds that the proposed amendment was not sufficiently specific. Accordingly, we deny the Plaintiff's Motion to Amend his Complaint as he has proposed, since such an amendment would be futile, and we recommend that Summary Judgment be entered in favor of Tallberg and Lamkin. *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962).

### b. *The Claims Against Lannon and LaTour.*

 The thrust of the Plaintiff's claim against Lannon and LaTour is that neither officer had probable cause to arrest him on May 22, 1991, because he had been charged on that date with disorderly conduct and he was never convicted of that charge. Although true as an historical fact, the Plaintiff's argument miscasts the issues before the Court by isolating a single event—as if it were a slice of time—from a continuous flow of events. Unlike the pathologist, who must make his judgments on the basis of a microscopic examination of a paper-thin tissue section—which is equivalent to the Plaintiff's slice of time—our analysis is macroscopic in its examination of the course of events as a whole in order to determine if a cause for constitutional concern is present. This broader view persuades us that, despite the erroneously stated basis for his arrest on

May 22, Lannon and LaTour had probable cause for arresting the Plaintiff and their actions have been adjudicated as reasonable by the State Courts of Minnesota.[11] In our view, the Plaintiff is collaterally estopped from retrying those issues, which were decided in the State Court proceedings or were subsumed in that decision, in the garb of a Section 1983 action.

In *Devan v. City of Des Moines, Iowa*, 767 F.2d 423, 424 (8th Cir.1985), cert. denied, 474 U.S. 1068, 106 S.Ct. 827, 88 L.Ed.2d 799 (1986), the Court addressed the role of collateral estoppel in a Federal civil rights action in the following terms:

> "A court properly applies collateral estoppel to bar a party from relitigating an issue actually and necessarily decided in a prior proceeding based on the same or a different cause of action." Hernandez v. City of Los Angeles, 624 F.2d 935, 937 (9th Cir.1980) (citing Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). In a federal civil rights action involving an issue of collateral estoppel, a federal court gives the same preclusive effect to a prior state court decision as would the courts of the state in which the prior judgment was entered. See Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); Smith v. Updegraff, 744 F.2d 1354, 1362 (8th Cir. 1984). Cf. Migra v. Warren City School District Board of Education, 465 U.S. 75 [80], 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

Accordingly, we look to the law of Minnesota in order to determine the preclusive effect in this action of the Plaintiff's State Court criminal proceeding. *Mandich v. Watters*, 970 F.2d 462, 465 (8th Cir.1992).

Minnesota Courts follow the general rules of collateral estoppel that are almost univer-

---

11. Minnesota Statutes Section 629.34, Subdivision 1(c)(1) authorizes a police officer to arrest a person without a warrant for a "public offense" that was committed in the officer's presence. The term "public offense" has been construed to embrace petty misdemeanors, such as that involved here. *Schmidtbauer v. Commissioner of Public Safety*, 392 N.W.2d 668, 669 (Minn.App. 1986), pet. for rev. denied (Minn. October 29, 1986); *State v. Sellers*, 350 N.W.2d 460, 462

(Minn.App.1984); *Smith v. Hubbard*, 253 Minn. 215, 220, 91 N.W.2d 756, 761 (1958); and see, *United States v. Rambo*, 789 F.2d 1289, 1293–94 and n. 4 (8th Cir.1986). As a consequence, the Plaintiff's arrest on May 22, 1991, was entirely lawful even though it was ultimately determined that there was insufficient evidence to convict the Plaintiff of the offense for which he was charged on that date.

sally applicable. *Glass v. IDS Financial Services, Inc.,* 798 F.Supp. 1411, 1415 (D.Minn.1992). Under Minnesota Law, the party that is invoking collateral estoppel must demonstrate:

(1) the issue was identical to one in a prior adjudication;

(2) there was a final judgment on the merits;

(3) the estopped party was a party or in privity with a party to the prior adjudication; and

(4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Mandich v. Watters,* supra at 465, quoting *Kaiser v. Northern States Power Co.,* 353 N.W.2d 899, 902 (Minn.1984).

Here, the only element in contest is the identity of the issues in this action and those adjudicated in the Plaintiff's State Court criminal proceeding.

While not necessarily a misnomer, the term "identical" is certainly a gloss upon the required degree of similarity which must exist between the issues in two proceedings in order for collateral estoppel to apply. As noted in *Sunrise Electric, Inc. v. Zachman Homes,* 425 N.W.2d 848, 851–52 (Minn.App. 1988):

Determining unity of claims is not an exact science. The traditional Minnesota test has been whether the same evidence will sustain both actions. Amalgamated Meat Cutters & Butcher Workmen of North America v. Club 167, Inc., 295 Minn. 573, 575, 204 N.W.2d 820, 821 (1973); Melady–Briggs Cattle Corp. v. Drovers State Bank, 213 Minn. 304, 309, 6 N.W.2d 454, 457 (1942). More recently, alternative tests have been advanced. In Johansen v. Production Credit Association of Marshall–Ivanhoe, 378 N.W.2d 59, 61 (Minn.Ct.App. 1985), this court applied the test of "whether the primary right and duty and the delict or wrong combined are the same in each action." And in Anderson v. Werner Continental, Inc., 363 N.W.2d 332, 335 (Minn.Ct.App.1985), pet. for rev. denied (Minn. June 24, 1985), this court employed a transactional approach, focusing on whether the same operative nucleus of facts is alleged in support of both claims.

And see, *Glass v. IDS Financial Services, Inc.,* supra at 1415–18. In this case, any of the three tests applied by the Minnesota Courts would support the invocation of collateral estoppel.

Reduced to its essentials, the final Judgment that was rendered by the State Courts of Minnesota determined that Lannon and LaTour had probable cause to arrest the Plaintiff for the offense of obstructing a police officer since, beyond a reasonable doubt, he was found to have been guilty of that offense. As the rule is recognized in this Circuit, an arrestee's conviction for the underlying offense is a complete defense to a civil rights claim that the arrest was without probable cause. *Bey v. Bridgeton Police Department,* supra at 1256, citing *Malady v. Crunk,* 902 F.2d 10 (8th Cir.1990).

In this respect, we are guided, if not controlled, by the Court's holding in *Grant v. Farnsworth,* 869 F.2d 1149 (8th Cir.1989), cert. denied, 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 202 (1989). There, the Court was confronted with a Section 1983 claim that was commenced by a political protestor whose disruptive conduct was sufficient to induce a police officer to attempt to arrest him. The protestor resisted the arrest, and the police officer enlisted the assistance of a bystander who helped to physically restrain the protestor. Following a trial in which the protestor was charged with "interfering with official acts," a Jury returned a guilty verdict. Subsequently, the protestor instituted a Section 1983 action against the police officer and the private citizen who assisted in the protestor's restraint. During the course of the Section 1983 trial, the Court admitted into evidence the protestor's conviction and, later, directed verdicts against the Plaintiff's First and Fourth Amendment claims on the grounds that those claims were collaterally estopped by the protestor's prior conviction. In affirming the Trial Court, the Court of Appeals stated:

Here Grant [i.e., the protestor] attempted to retry the validity of his arrest, for a crime of which he was convicted in state court. The state court jury decided be-

yond a reasonable doubt that he was guilty of the crime charged. This necessarily entails that the officers acted lawfully in removing Grant from the parade site, and that his interests in remaining at the parade and in exercising first amendment rights were terminated upon his arrest. Until Grant took a swing at Officer Knock, there had been no wrongful interference with his first amendment rights. After the swing there was no wrongful interference with these rights because he was lawfully arrested. Further, the district court properly determined that because the arrest was proper, any interference with Grant's first amendment rights was not the proximate cause of his alleged injuries.

*Id.* at 1151; and see, *Schertz v. Nix,* 975 F.2d 1382, 1384 (8th Cir.1992); *Munz v. Parr,* 972 F.2d 971, 973 (8th Cir.1992); *Lane v. Peterson,* 899 F.2d 737 (8th Cir.1990), cert. denied, 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990).

The very same may be said here.

▆▆ The State District Court found that the only reasonable course of conduct that the Plaintiff presented to Lannon and La-Tour was to arrest him. The decision of the District Court was appealed on the basis of the sufficiency of the evidence, and the final Judgment of the State Courts necessarily upheld the propriety of the Plaintiff's arrest for obstructing a police officer. Of course, we are aware that the Plaintiff is convinced

that he committed no crime on May 22, 1991, and the record before us demonstrates the strength of his conviction—both in the sense of his heartfelt belief in his own innocence and, as a double entendre, in the sense of the final adjudication of guilt which mandates our deference, at least in the absence of any showing that the Plaintiff was denied a full and fair hearing in the State Courts. The Plaintiff makes no such showing here. He was represented by counsel and he appealed those aspects of his conviction as he felt warranted review. We find no basis to preclude the application of collateral estoppel, and we conclude that the Plaintiff's effort to retry his criminal conviction in this Court should be denied.[12]

Even if we were not persuaded by the holding in *Grant v. Farnsworth,* supra, our result would not be appreciably different, since the Affidavits of Lannon and LaTour provide an appropriate evidentiary basis in support of their expressed opinion that they had reasonable grounds to effectuate their arrest of the Plaintiff on May 22, 1991. Notably, the Plaintiff has not provided any countering Affidavits, and the averments of Lannon and LaTour have not been controverted in this record. Since the only evidence in this record defeats the Plaintiff's claim, Summary Judgment is appropriate. See, *Davis v. City of Charleston, Missouri,* 827 F.2d 317, 321–22 (8th Cir.1987), rev'd on other grounds, 917 F.2d 1502 (8th Cir.1990).[13]

---

**12.** The Plaintiff has also alleged that he has been denied his rights under the Fifth and Fourteenth Amendments "to be free from unjustified and excessive force utilized by police and intentional harassment by the police." We find no viable cause of action in this respect.

First, we note that the State District Court determined that the officers' physical restraint of the Plaintiff was their only reasonable course of action, and the Plaintiff does not allege that he suffered any physical injury as a result of the assertedly excessive force used. See, *Patzner v. Burkett,* 779 F.2d 1363, 1371 (8th Cir.1985); *Agee v. Hickman,* 490 F.2d 210, 212 (8th Cir. 1974) (force can be used to overcome physical resistance), cert. denied, 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143 (1974). Quite simply, a *de minimis* use of force will not implicate the Fourth Amendment guarantees. *Foster v. Metropolitan Airports Commission,* 914 F.2d 1076 (8th Cir.1990).

Moreover, as a general proposition, mere threats, defamation and acts of simple assault by

arresting officers are not actionable under Section 1983. *Bey v. Bridgeton Police Department,* 775 F.Supp. 1255, 1256 (E.D.Mo.1991), citing *Burton v. Livingston,* 791 F.2d 97, 99 (8th Cir. 1986). If the comments that the Plaintiff alleges were, in fact, uttered by Lannon and LaTour, then it is certainly reproachable conduct which would, in our judgment, warrant disciplinary action, but those comments do not rise to constitutional proportions. *Id.*

**13.** We would also note that the same result is reached even in the absence of collateral estoppel and of the Affidavit evidence. In *Malady v. Crunk,* 902 F.2d 10 (8th Cir.1990), the Court adopted the rule that, where law enforcement officers have made an arrest, the resulting conviction is a defense to a Section 1983 action asserting that the arrest was made without probable cause. See also, *Cameron v. Fogarty,* 806 F.2d 380 (2d Cir.1986), cert. denied, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

### D. *The State Law Claims.*

As the foregoing reflects, in our judgment the Plaintiff has no Federal cause of action. As a consequence, this Court does not possess the supplemental jurisdiction to entertain those claims of the Plaintiff which are premised upon the Constitution and the Laws of the State of Minnesota. See, *Title 28 U.S.C. §§ 1367(a) and (c)(3); United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Richmond v. Board of Regents of the University of Minnesota*, 957 F.2d 595, 598–99 (8th Cir.1992); *Weseman v. Meeker County*, 659 F.Supp. 1571, 1579 (D.Minn.1987); *Cook v. City of Minneapolis*, 617 F.Supp. 461, 469 (D.Minn.1985).[14]

Accordingly, we recommend that Summary Judgment be entered in favor of Lannon and LaTour.[15]

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion to Amend his Complaint [Docket No. 34] shall be, and hereby is, DENIED.

2. That the Plaintiff's Motion to Compel Answers to Interrogatories [Docket No. 37] shall be, and hereby is, DENIED as moot.

3. That the Defendants' Motion to Compel [Docket No. 48] the Plaintiff to execute authorizations with which the Defendants may review his record of prior incarcerations and his past medical records shall be, and hereby is, DENIED as moot.

4. That the Plaintiff's Motion to Compel [Docket No. 52] an independent medical ex-amination of the Defendant Tallberg shall be, and hereby is, DENIED as moot.

5. That the Plaintiff's Motion to Quash "all irrelevant documents" [Docket No. 65] shall be, and hereby is, DENIED as moot.

AND, It is—

RECOMMENDED:

1. That the Defendant Tallberg's Motion for Summary Judgment [Docket No. 20] be granted.

2. That the Defendant Lamkin's Motion for Summary Judgment [Docket No. 25] be granted.

3. That the Motion for Summary Judgment of the Defendants [Docket No. 28] Lannon and LaTour be granted.

### NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 1, 1993,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 1, 1993,**

---

Accordingly, we do not reach the issue of the Defendants' qualified immunity for the actions of which they are accused.

**14.** Similarly, we find no viable claim under Title 42 U.S.C. § 1988, as we have found no actionable Federal claim that the Plaintiff may pursue in this Court, and his claims under this Section should also be dismissed. See, *Kay v. Ehrler*, 499 U.S. 432, ——, 111 S.Ct. 1435, 1437, 113 L.Ed.2d 486 (1991) (*pro se* litigant in a Section 1988 action is not entitled to an award of attorney's fees); *Coleman v. Turner*, 838 F.2d 1004, 1005 (8th Cir.1988).

**15.** Lastly, we consider the Plaintiff's Motion that was filed on May 7, 1993, and which seeks a quashing of "all irrelevant documents" and, in particular, any reference to *State by Johnson v. City of Duluth*, 402 N.W.2d 579 (Minn.App. 1987), pet. for rev. denied (Minn. May 18, 1987). The *Johnson* case addresses a disability discrimination claim that the Plaintiff had filed against the City of Duluth some years ago. In support of the Motion, the Plaintiff has filed various pieces of correspondence which, ostensibly, address the issues in that case. No one has opposed the Motion and, because we agree with the Plaintiff that the considerations addressed in *Johnson* are irrelevant to the issues presently before the Court, we have not given any weight to the holdings and rationale of that case. Accordingly, the Plaintiff's Motion is denied as moot.

unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.