Anita Jo GARRISON, as Next Friend and Legal Guardian of Chancy Chanel Garrison, Ciara Jenel Garrison, and Cruz Eleyan Garrison, Minor Children; and Jenetta A. Garrison, Plaintiffs,

v.

The CITY OF TEXARKANA, TEXAS; an Incorporated Municipality; David Biggar, Robert McCarver, and Jeff Gladden, Individually and in Their Official Capacity, Defendants.

No. 5–94CV017.

United States District Court, E.D. Texas, Texarkana Division.

Dec. 29, 1995.

Donald Ray McNeal, Houston, Texas, for plaintiffs.

Robert W. Weber, Atchley, Russell, Waldrop & Hlavinka, Texarkana, Texas, for defendants.

## *MEMORANDUM OPINION AND ORDER*

FOLSOM, District Judge.

Before the Court are several motions filed by the Defendants in this action. These include 1) Defendants David Biggar, Robert McCarver, and Jeff Gladden's Motion for Summary Judgment; 2) Defendant City of Texarkana, Texas' Motion for Summary Judgment; and, 3) Defendants' Second Motion for Partial Summary Judgment on Plaintiffs' State Law Claims.[1] The Court, having reviewed the motions, the responses thereto, and the affidavits and pleadings on file, grants Defendants Robert McCarver and Jeff Gladden's Motions for summary judg-

---

1. Defendants' Second Motion for Partial Summary Judgment on Plaintiffs' State Law Claims was made on behalf of all Defendants herein.

ment on all claims [2]; grants Defendant David Biggar's motion for summary judgment with respect to Plaintiffs' claims for violation of § 1985(2) and § 1985(3); denies Defendant David Biggar's motion for summary judgment with respect to the remaining claims; grants the City of Texarkana's motion for summary judgment with respect to Plaintiffs' claims for violation of § 1985(2) and § 1985(3); and denies the City of Texarkana's motions for summary judgment with respect to the remaining claims.

## I. FACTUAL BACKGROUND

This is a civil rights case under 42 U.S.C. § 1983, 1985(2) and § 1985(3) brought by the heirs of Cleta Garrison ("Garrison") for the death of Garrison on January 14, 1994.[3] Garrison was shot and killed by a Texarkana, Texas, police officer after she was taken into custody and awaiting transport to the police station.

The facts which are not in dispute are as follows. The three individual defendants in this action, Texarkana, Texas, Police Officers David Biggar, Robert McCarver, and Jeff Gladden,[4] were patrolling an area on Milam Street in Texarkana, Texas. Specifically, the officers were observing a residence at 2024 Milam Street which Defendants allege was a "known drug selling location."[5] McCarver observed Garrison approach this address and engage in what Defendants allege to be a drug related transaction. McCarver related this information to Gladden who consequently stopped Garrison and requested she empty her coat pockets. Garrison refused to empty her pockets. Instead, she fled, making a throwing motion as she did so. She was apprehended, handcuffed, and searched. Her coat pocket contained a rock-like substance, which was later determined to be crack cocaine. The officers placed her in handcuffs in the patrol car, then searched the area to find what Garrison had thrown while

fleeing. Unable to locate the thrown object, Gladden decided to transport Garrison to the police station and McCarver was going to follow. It is at this point the parties' versions of the facts diverge. According to Defendants, Gladden opened the patrol car door and noticed that his .357 magnum back-up weapon was missing from the front driver's seat where he maintained it under his right thigh. McCarver began looking for the gun on the passenger side of the front seat, while Biggar, suspecting that the backup weapon might have fallen off of the driver's seat and slid under the seat, opened the back driver's side door. Biggar first observed Garrison's hands behind her back. Next he looked toward the floorboard of the car and heard a shot. He looked up and observed Garrison out of her handcuffs with the backup weapon. Biggar began to run and then realized he had been shot in the left bicep. Gladden ran to the front of the patrol car, and McCarver observed Garrison exit the patrol car, still in possession of the backup weapon. Gladden heard a second shot. Garrison yelled once or twice at the officers to "get back." She then fled on foot. McCarver then returned fire, firing three shots in Garrison's direction. Two of the shots struck the windshield of the patrol car and the other struck the driver's side door. Garrison then ran south, causing McCarver and Gladden to lose sight of her.

Biggar at this point had run in a southeasterly direction, and he turned and observed Garrison running south. According to his affidavit, "with every step, she was getting closer to [his] location. [He] could see the gun was in her hand. [He] feared for [his] own safety and the safety of the other officers."[6] Two shots were fired and one shot struck and killed Garrison.

Plaintiffs' factual allegations differ. They allege that Garrison remained in the patrol car approximately fifteen to twenty minutes

---

**2.** Both motions for summary judgment are granted with respect to these two officers, including the Officers' Second Motion for Partial Summary Judgment on Plaintiffs' State Law Claims.

**3.** Plaintiffs also seek to impose liability against Defendants for negligence and gross negligence pursuant to the Texas Wrongful Death Statute, Survival Statute and Tort Claims Act.

**4.** Hereafter referred to as "Biggar," "McCarver," "Gladden," respectively or as the "officers."

**5.** See Affidavit of Jeff Gladden, p. 1.

**6.** Affidavit of David Biggar, p. 3.

when Gladden checked on her. Some time after, according to Plaintiffs' Second Amended Complaint, Garrison opened the rear patrol car door and fled on foot. Garrison was still in handcuffs at this time, with her wrists cuffed behind her.[7] According to Plaintiffs, Garrison was running at an angle when the officers opened fire. Biggar fired at least two shots with a .45 caliber revolver, fatally shooting Garrison in the temple at close range. Plaintiffs further allege that Biggar was heard to state racial epithets at Garrison as she lay on the ground.[8] With respect to the gunshot wound Biggar received to his left arm, Plaintiffs' claim it was inflicted by one of the other officers.[9]

Plaintiffs have pled three causes of action against the individual defendants. Specifically, Plaintiffs claim that (1) the officers used unreasonable and excessive force in effecting an allegedly unlawful arrest of Garrison in violation of Garrison's Fourth Amendment rights pursuant to 42 U.S.C. § 1983; (2) the officers violated 42 U.S.C. § 1985(2); (3) the officers violated 42 U.S.C. § 1985(3), by conspiring to deprive Garrison of her civil rights; and, (4) the officers were negligent and grossly negligent. Additionally, Plaintiffs have alleged that McCarver violated Garrison's Fourth Amendment rights to be free from unlawful arrest by initiating an arrest without an arrest warrant or probable cause.[10]

Against the City of Texarkana ("City"), Plaintiffs have pled (1) violations of Garrison's Fourth Amendment rights by the police department's deliberate indifference to her rights and safety and promulgation and maintenance of policies, customs, practices and procedures of employment of peace officers who have a propensity for violence, dishonesty, bigotry and racism, all in violation of 42 U.S.C. § 1983; and, (2) negligence and gross negligence.

The officers have filed a motion for summary judgment, claiming that they enjoy qualified immunity from suit. The City has also filed a motion for summary judgment contending that if the Court concludes that the underlying claims against the officers fail, so must any claim against the City for failure to train. Additionally, the City urges that liability cannot be premised on a single incident of wrongful conduct, and the Plaintiffs have failed to plead or show a pattern of inadequate training to establish a custom.

## II. DISCUSSION

### A. SUMMARY JUDGMENT

■ Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits and other evidence available to the Court establish that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The movant bears the responsibility of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.1992), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

---

**7.** Plaintiffs allege in the alternative that according to Defendant City, the patrol car in which Garrison was placed was left unattended with a .357 magnum revolver in the front seat. Plaintiffs allege that the barrier between the front and back seats which had been installed by Defendant City provided Garrison an invitation and opportunity to obtain the weapon. Thus, Plaintiffs allege that "but for" the intentional act of placing the improper barrier, Garrison would not have been killed.

**8.** Plaintiffs' Second Amended Complaint alleges that Biggar stated the racial epithets but also alleges that "one of the officers" stated racial epithets.

**9.** In the alternative, Plaintiffs allege Garrison shot Biggar after obtaining the backup weapon, and she was found on the ground with one wrist handcuffed only.

**10.** Plaintiffs' Second Amended Complaint, pp. 21–22. Plaintiffs direct this allegation to McCarver only. The motions for summary judgment filed on behalf of McCarver do not address this claim against McCarver. Accordingly, the Court does not address this claim in this Memorandum Opinion and Order.

The non-movant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley,* 992 F.2d 540 (5th Cir.1993). Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts showing that there is a genuine issue for trial. FED.R.CIV.P. 56(e). It is not enough for the party opposing summary judgment to rest on mere conclusory allegations or denials in his pleadings. *Topalian, supra* at 1131. The non-movant must point out, with factual specificity, evidence demonstrating the existence of a genuine issue of material fact on every component of the nonmovant's case. *Dunn v. State Farm Fire & Casualty Co.,* 927 F.2d 869, 872 (5th Cir.1991). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). In assessing the proof, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge hearing a motion for summary judgment may not weigh the evidence or determine its credibility, but rather must determine whether the opposing party's evidence is sufficient to satisfy the standard of proof established by substantive law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. EXCESSIVE FORCE CLAIM AGAINST THE OFFICIALS

Plaintiffs have alleged that the officers used excessive force in effecting the arrest of Garrison in violation of Garrison's Fourth Amendment rights. The Officers move for summary judgment claiming they are entitled to qualified immunity from suit.

Qualified immunity protects government officials serving in a discretionary capacity from liability for actions undertaken in their official capacity. The purpose of the doctrine is to avoid "distractions of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow v. Fitzgerald,* 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). A defendant entitled to claim qualified immunity is shielded not only from liability but also from "the costs of trial [and] ... the burdens of broad-reaching discovery." *Lion Boulos v. Wilson,* 834 F.2d 504 (5th Cir.1987) *quoting Harlow,* 457 U.S. at 817, 102 S.Ct. at 2738. Qualified immunity shields law enforcement officers from suit under 42 U.S.C. § 1983 if they could have reasonably believed their actions to be lawful, in light of the law "clearly established" at the time of their actions and the information the officers possessed. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. The Court must conduct what is essentially a three prong inquiry. First, the Court determines "whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Second, the Court ascertains whether the law was clearly established at the time of the official's action. *Siegert,* 500 U.S. at 233–34, 111 S.Ct. at 1794–95. Third, the Court evaluates the "objective reasonableness of the official's conduct as measured by reference to clearly established law." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

Plaintiffs allege the officers infringed on Garrison's Fourth Amendment rights to be free from unreasonable and excessive force by law enforcement personnel. Specifically, Plaintiffs claim the officers shot and killed Garrison after she had been taken into custody. The Fourth Amendment guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures of the person." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Where the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most prop-

erly characterized as one invoking the protections of the Fourth Amendment. *Id.* [11] The Fifth Circuit Court of Appeals stated in *Valencia v. Wiggins,* "[a]s the Fourth Amendment protects against unreasonable 'seizures,' it seems primarily directed to the *initial* act of restraining an individual's liberty, such as an investigatory stop or arrest." [12] Garrison was detained, handcuffed, and placed into custody by the officers at the time of the alleged abuses, and the Court will apply the Fourth Amendment's "objective reasonableness" standard in evaluating Plaintiffs' claim.

Taking the Plaintiffs' allegations as true, Plaintiffs have asserted a violation of Garrison's Fourth Amendment rights, which are clearly established. The Fourth Amendment prohibition against unreasonable searches and seizures is implicated here because "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Garner,* 471 U.S. at 7, 105 S.Ct. at 1699. Thus, the Court finds that the Plaintiffs have asserted a violation of a constitutional right which was clearly established at the time of the incident.

With regard to the final prong of the analysis, in *Anderson, supra,* the United States Supreme Court explained that when a plaintiff invokes a clearly established right, the appropriate inquiry is whether " '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right.' " *Fraire v. City of Arlington,* 957 F.2d 1268 (5th Cir.1992) *quoting Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. The objective reasonableness of defendant's conduct must be measured with reference to the law as it existed at the time of the conduct in question.

This incident occurred January 14, 1994. At that time, the Supreme Court had decided *Graham,* which established that excessive force claims occurring before or during arrest are governed by the Fourth Amendment's objective reasonableness standard that a defendant's use of deadly force will be justified under the Fourth Amendment if a reasonable officer in defendant's position would have had probable cause to believe that there was a threat of serious physical harm to themselves or others. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. "Careful attention is paid to the facts and circumstances of [the] particular case," *Graham,* 490 at 396, 109 S.Ct. at 1872. The Court asks whether the "totality of the circumstances" justified the use of force. *Garner,* 471 U.S. at 8–9, 105 S.Ct. at 1699–1700.

Because Biggar fired the fatal shot, the Court will first consider whether McCarver and Gladden violated Garrison's Fourth Amendment rights to be free from unreasonable or excessive force. Biggar is the officer in this case that employed the force resulting in Garrison's death. It is undisputed that the shot which struck and killed Garrison was fired from his 45 caliber handgun. Plaintiffs have not alleged that Gladden or McCarver used excessive force in the detention or arrest of Garrison. Plaintiffs allege in the Second Amended Complaint that "[t]hose defendants who did not physically shoot the decedent, CLETA RENEE GARRISON, knew of it by firsthand knowledge and failed to disclose it as required by written, but unenforced, Texarkana, Texas, Police Department regulations." [13] This is not a claim of excessive force on the part of McCarver and Gladden. Neither Plaintiffs' Second Amended Complaint nor any of the evidence submitted by Plaintiffs indicates that McCarver or Gladden used excessive force in the detention and arrest of Garrison. Accordingly, absent evidence of the use of any unreasonable or excessive force, the Court finds that McCarver and Gladden did

---

**11.** As stated by the Court in *Graham,* "[t]hough the complaint alleged violations of both the Fourth Amendment and the Due Process Clause, ... we analyzed the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition against unreasonable seizures of the person, holding that the 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out. *Id.,* quoting *Tennessee v. Garner,* 471 U.S. 1, 5, 7–8, 105 S.Ct. 1694, 1698, 1699–1700, 85 L.Ed.2d 1 (1985).

**12.** 981 F.2d 1440, 1444 (5th Cir.1993), *emphasis in the original.*

**13.** Plaintiffs' Second Amended Complaint, p. 27.

not violate Garrison's Fourth Amendment rights to be free from excessive and unreasonable force, entitling them to judgment as a matter of law with respect to Plaintiffs' claims of excessive force.

 The Court must now evaluate the objective reasonableness of Biggar's conduct in applying the deadly force as measured by reference to clearly established law. As stated previously herein, Biggar's use of deadly force will be justified under the Fourth Amendment if a reasonable officer in Biggar's position would have had probable cause to believe that there was a threat of serious physical harm to himself or others. According to *Graham*, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct at 1872. The "reasonableness" inquiry in an excessive force case is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*

Genuine issues of fact exist surrounding the detention, arrest and flight of Garrison which preclude the Court from ascertaining whether Biggar would have probable cause to believe that Garrison posed a threat of serious physical harm to himself or others. While the officers' evidence submitted herein attempts to establish that Garrison slipped one of her handcuffs off of her wrist, obtained Gladden's back-up weapon, shot Biggar, and was fleeing with the weapon when she was shot by Biggar, Plaintiffs have produced sufficient evidence to create a fact issue with regard to these contentions. The affidavit of Rev. Herbert Garrison states unequivocally that when he observed Garrison's body on the ground after she had been shot "her hands were cuffed behind her. [He] saw the officers release the handcuffs after the shooting."[14] Likewise, the affidavit of Othie Henderson, submitted by Plaintiffs, states that "[t]he police officer at the feet removed the handcuffs from the body on the ground. [He] saw him take the handcuffs off of both hands."[15] There is also a fact issue with regard to whether Garrison ever fired the back-up weapon. Plaintiffs submit the report of Vicki Hall, an analyst with the Southwestern Institute of Forensic Science, which contains an analysis of the handwipings of Garrison after the incident. The report found that the chemical elements indicative of Garrison's having discharged a firearm were not found on the backs of Garrison's palms. The report stated "[b]arium and antimony levels meeting the criteria for evidence of gunshot residue were not found on item 1. The absence or low levels of these metals on the hands could be due to the [deceased's] ... [n]ot discharging a firearm...."[16] This issue is further complicated by the forensic analysis which was unable to determine the firearm that fired the bullet removed from Biggar's arm. Plaintiffs contend that the bullet which struck Biggar was fired by one of the other officers, while the officers maintain that the shot was fired by Garrison. According to a report prepared by Raymond E. Cooper, Firearm and Tool Mark Examiner with the Southwestern Institute of Forensic Science, the lead projectile removed from Biggar at the hospital was merely a core from a jacketed bullet. The examiner determined that "[the lead projectile] is of no value for comparison, general rifling characteristics or manufacture of the firearm that could have fired it."[17] Consequently, Defendants' motion for summary judgment with respect to Plaintiffs' claim of excessive force against Biggar is denied.

14. Plaintiffs' Affidavits in Support of Defendants' Motion for Summary Judgment, Affidavit of Rev. Herbert Garrison, p. 8. (Plaintiffs incorrectly titled this affidavit in the footer, which should describe that the affidavit is in support of Plaintiffs' response to Defendants' motions.)

15. Affidavit Supplement to Plaintiff's [sic] Response [to] Defendants' Motion for Summary Judgment, Affidavit of Othie Henderson, p. 1.

16. Exhibit "B," Affidavit of Plaintiffs' attorney of certain exhibits provided by the Defendants in their initial disclosure, Defendant's Exhibit 19.

17. Exhibit "B," Affidavit of Plaintiffs' attorney of certain exhibits provided by the Defendants in their initial disclosure, Defendant's Exhibit 75.

## C. SECTION 1983 CLAIMS AGAINST THE CITY

The City moves for summary judgment on Plaintiffs' claims against it arising under 42 U.S.C. § 1983. These claims include the City's alleged failure to train its officers in the areas of use of excessive force, use of backup weapons, transfer of suspects, and handcuff procedures.

■ The inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–89, 109 S.Ct. 1197, 1203–05, 103 L.Ed.2d 412 (1989). A municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 378, 109 S.Ct. at 1197.

The City contends that if the Court concludes that the "underlying claims against the individual officers must fail, so must any claims against the City of Texarkana based upon an alleged failure to train." [18] The City asserts that if the officers' conduct did not cause a constitutional violation, then the City cannot be guilty of a failure to train under § 1983. This argument has merit if the Plaintiffs' theory of municipal liability is based upon its responsibility for the particular officer's allegedly unconstitutional conduct as opposed to an alleged constitutional violation resulting from enforcement of municipal policy or custom. [19]

The Supreme Court dealt with the issue of the effect of a verdict in favor of an officer in his personal capacity when suit is brought against both the officer and the municipality in *Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). In that case, the Court held that a verdict in favor of the officer required dismissal of the claim against the city. The city in *Heller* was sued because it was thought to be legally responsible for the officer's conduct. Thus, if the officer did not inflict constitutional injury on the plaintiff, then the city could not be liable to the plaintiff. However, it has been said that while *Heller* seems to stand for the broad proposition that a finding that the officer acted constitutionally requires dismissal of the municipality, it should be given a narrow reading and not be extended beyond those instances when the city's liability is based upon its responsibility for the particular officer's allegedly unconstitutional conduct. [20] If the constitutional violation resulted from enforcement of municipal policy or custom, then the municipality will be liable for its wrongs. [21]

In this case, Plaintiffs seek to impose liability on the City based on a myriad of allegations, many of which overlap (1) liability based upon its responsibility for the officers' alleged unconstitutional conduct, with (2) the alleged constitutional violation resulting from the enforcement of municipal policy or custom. Plaintiffs allege that the City has actual knowledge of police misconduct, specifically referring to an incident involving a Walter L. House and to allegations of excessive force on the part of McCarver. Additionally, Plaintiffs allege that the City has a history of tolerating and inciting the use of excessive and unreasonable force to such an extent that it has become custom or habit. These allegations against the City are separate and distinct from any allegations based upon responsibility for the officers' actions. Thus, the Court will not grant the City's motion based on the dismissal of Gladden and McCarver, as suggested by the City, nor

**18.** Defendant City of Texarkana, Texas' Motion for Summary Judgment, p. 3.

**19.** 1 MARTIN A. SCHWARTZ & JOHN E. KIRKLIN, SECTION 1983 LITIGATION, CLAIMS, DEFENSES, AND FEES § 7.6 (2d ed. 1991).

**20.** *Id.*

**21.** *See Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th. Cir.1985); *Anderson v. City of Atlanta*, 778 F.2d 678 (11th Cir.1985).

will the Court deny summary judgment based on the finding of a genuine fact issue with regard to Biggar's alleged use of excessive force. The allegations against the City will be evaluated separately from those against the officers.

■ The Court finds that there are material fact issues with respect to Plaintiffs' claims that the City lacked adequate policies, procedures and training for the officers' carrying of back-up weapons, specifically where the back-up weapons are to be carried when the officers are carrying persons in custodial arrest. Plaintiffs cite the Manual of General Orders, chapter 12.02.001 in support of the allegation that such procedures are not provided for by the City. Plaintiffs allege that the absence of the procedures and training is a matter of policy or custom. Whether the Plaintiffs will ultimately succeed in proving that the alleged deficiencies constitute a policy or custom is a proper matter for a jury or other fact finder to decide. *See Partridge v. Two Unknown Police Officers of Houston,* 791 F.2d 1182 (5th Cir.1986).

To the extent that Plaintiffs complain of inadequate training on the use of force, the Court finds that there are material fact issues precluding summary judgment as well. Plaintiffs do not plead only this isolated incident in support of their allegation that it is the policy and custom of the City to adequately train its officers on the use of force or to prepare adequate written policies and guidelines. Plaintiffs' Second Amended Complaint references two other incidents regarding allegations of excessive force against its officers.[22] Plaintiffs have properly alleged that the custom represents municipal policy. The facts alleged in the Second Amended Complaint are sufficient to support the allegation that the policy was persistent and widespread. Plaintiffs may or may not ultimately prevail on this issue, but will be given the opportunity to further develop this theory of liability through discovery.

**D. VIOLATIONS OF § 1985(2) and § 1985(3)**

Plaintiffs' third and fourth causes of action contained in the Second Amended Complaint allege violations of 42 U.S.C. § 1985(2). Plaintiffs' Second Amended Complaint has two sections devoted to allegations of violations of § 1985(2). However, the first page of Plaintiffs' Second Amended Complaint contains a section delineating the causes of action asserted therein, and this section states that the third cause of action is for violations of § 1985(2), and the fourth cause of action is for violations of § 1985(3). Therefore, the Court will treat the third cause of action contained in the body of the complaint as Plaintiffs' allegations of violations of § 1985(2) and the fourth cause of action will be for allegations of violations of § 1985(3).

■ Subsection (2) of § 1985 prohibits the obstruction of justice by threatening a party, witness or juror from attending or testifying in any Court of the United States. In this case, Plaintiffs have not made any allegations that the officers threatened a party, witness or juror from attending or testifying in any Court of the United States or that they conspired to do so. Defendants contend in their motion that they believe Plaintiffs intended to assert a claim under § 1985(3), which prohibits conspiring to deprive a person of equal protection under the law. Regardless of whether the Plaintiffs mistakenly made this allegation or whether it was intentional, the Court finds that there are no genuine factual disputes with respect to any violation of § 1985(2) and the defendant officers are entitled to judgment as a matter of law.

■ Likewise, the Court grants Defendants motion for summary judgment with respect to the alleged violations of § 1985(3). The essential elements for imposing liability

---

22. Plaintiffs' Second Amended Complaint, p. 38 states that "subsequent to the January 14, 1994 action, the defendant City has actual knowledge of police misconduct allegations involving WALTER L. HOUSE, a 76-year old Texarkana, Texas man who filed a complaint against with [sic] Police Chief Gary Adams...." Plaintiffs also allege that "the defendant CITY is aware of allegations of excessive force involving Defendant ROBERT McCARVER, and other named persons arresting a young black suspect in or about June 1994 near the Oak Street Baptist Church which was reported to the Police Chief, Gary Adams...."

under § 1985(3) that the Plaintiffs must prove are:

(1) Garrison was a member of a protected class;

(2) Defendants conspired to deprive Garrison of her constitutional rights;

(3) Defendants acted with a race-based invidiously discriminatory animus; and,

(4) Garrison suffered injury as a result of the Defendants' actions.

42 U.S.C. § 1985(3) (1994).

The officers contend that summary judgment is appropriate because the "evidence offered by defendants overwhelmingly establishes that the officers neither conspired to deprive Garrison of her rights, nor did they act with a race based discriminatory animus." [23] Conspiracy is an essential element of a cause of action for damages for conspiracy to interfere with civil rights. *Simmons v. Zibilich*, 542 F.2d 259 (5th Cir.1976). To prove the existence of a conspiracy under this statute, the plaintiff must allege and establish facts showing a meeting of the minds. *Taliaferro v. Voth*, 774 F.Supp. 1326 (D.C.Kan.1991). While Plaintiffs have set out the language contained in § 1985(3) in their Second Amended Complaint, Plaintiffs have not pled *facts* sufficient nor submitted evidence sufficient to create a fact issue with regard to the conspiracy element necessary to impose liability on the officers. Because the Plaintiffs have not pointed out with factual specificity evidence demonstrating the existence of a fact issue on Plaintiffs' § 1985(3) claim, the Court grants the officers' motion for summary judgment.

## E. NEGLIGENCE AND GROSS NEGLIGENCE CLAIM AGAINST THE OFFICERS

The Plaintiffs allege that the officers were negligent and grossly negligent and are liable for damages pursuant to the Texas Wrongful Death and Survival Statutes.[24] Specifically, Plaintiffs allege that the officers were negligent in using inappropriate force and that Gladden was negligent in failing to secure his backup weapon after Garrison had been placed in the patrol car.

■ In support of their motion for summary judgment on this claim, the officers contend that they enjoy official immunity. When a government employee carries out the discretionary duties of his job in good faith and acts within the scope of his authority, the employee is entitled to official immunity from suit. *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex.1994); *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.Civ.App.—San Antonio 1981, writ ref'd. n.r.e.).

■ Addressing Plaintiffs' claims against Gladden for alleged negligence in failing to secure his backup weapon, the Court finds that this act was discretionary, requiring personal deliberation, decision and judgment, *Travis v. City of Mesquite*, 830 S.W.2d 94 (Tex.1994), as opposed to being ministerial, which requires obedience to orders, leaving no choice to the actor. *Id.* The Court also is of the opinion that Gladden was acting in good faith at the time. Gladden's affidavit states that "[he] keeps his backup gun at the same spot inside [his] car at all times. This is under [his] right thigh while in the driver's seat." [25] This is evidence that Gladden was acting in good faith. There is no evidence to the contrary. Finally, Gladden was clearly acting within the scope of his authority. Thus, Gladden is entitled to official immunity with regard to Plaintiffs' allegation that he was negligent in failing to secure his backup weapon.

■ With regard to Plaintiffs' allegations against both Gladden and McCarver for alleged use of excessive force, the Court finds that these officers did not use excessive force which resulted in Garrison's death. As discussed earlier in this opinion, Plaintiffs allege that these officers are liable for use of excessive force, however, no facts have been pled

---

**23.** Defendants', David Biggar, Robert McCarver, and Jeff Gladden, Motion for Summary Judgment, p. 21.

**24.** Tex.Civ.Prac. & Rem.Code § 71.004 and § 71.021, respectively.

**25.** Affidavit of Jeff Gladden in Support of Defendants David Biggar, Robert McCarver, and Jeff Gladden's Motion for Summary Judgment, p. 2.

supporting this contention. Further, it is undisputed that Biggar fired the fatal shots killing Garrison. Accordingly, summary judgment is granted as to this allegation.

■ With respect to the alleged negligence and gross negligence of Biggar, the Court finds that there are genuine fact issues on whether Biggar acted in good faith in discharging his weapon as Garrison attempted her escape. As discussed earlier in this opinion regarding whether Biggar is entitled to qualified immunity, the facts are in dispute on whether Garrison fired the shot that struck Biggar in the arm, whether she was in possession of Gladden's backup weapon, and whether both of Garrison's wrists were cuffed at the time of the incident. Because of the existence of these fact issues, the Court is unable to determine whether Biggar knew or reasonably should have known that the action he took would violate Garrison's constitutional rights.

### F. NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS AGAINST THE CITY

■ Plaintiffs allege the City is liable under the Texas Tort Claims Act. According to the Texas Tort Claims Act, a governmental unit in the state is liable for:

1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:

A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

B) the employee would be personally liable to the claimant according to Texas law; and

2) personal injury and death so caused by a condition or use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex.Civ.Prac. & Rem.Code § 101.021.

The officers argue that the City enjoys sovereign immunity from suit and that the City's liability under the Texas Tort Claims Act depends on the personal liability of the police officers. Thus, if Biggar enjoys official or qualified immunity, then the City is entitled to immunity. Clearly, the plain language of the act supports this position; however, the Court finds that Biggar is not entitled to official immunity from suit for his alleged use of excessive force. Because there are fact issues pertaining to his liability, the Court denies the City's motion for summary judgment on the issue of liability under the Texas Tort Claims Act. It is therefore

ORDERED, ADJUDGED and DECREED that Defendants Robert McCarver and Jeff Gladden's Motions for Summary Judgment on all claims are hereby in all things GRANTED;

ORDERED, ADJUDGED and DECREED that Defendant David Biggar's Motion for Summary Judgment with respect to Plaintiffs' claims for violations of 42 U.S.C. § 1985(2) and § 1985(3) is hereby in all things GRANTED;

ORDERED, ADJUDGED and DECREED that Defendant David Biggar's Motions for Summary Judgment with respect to the remaining claims are hereby in all things DENIED.

ORDERED, ADJUDGED and DECREED that Defendant City of Texarkana's Motion for Summary Judgment with respect to Plaintiffs' claims for violations of 42 U.S.C. § 1985(2) and § 1985(3) is hereby in all things GRANTED;

ORDERED, ADJUDGED and DECREED that Defendant City of Texarkana's Motions for Summary Judgment with respect to the remaining claims are hereby in all things DENIED.